UNITED STATES of America, Plaintiff-Appellee,

v.

Dr. H. G. WITHROW, f/d/b/a Hustisford Hospital, Defendant-Appellant.

No. 78–1719.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 16, 1979.

Decided March 15, 1979.

Stewart G. Honeck, Milwaukee, Wis., for defendant-appellant.

Joseph P. Stadtmueller, Asst. U. S. Atty., Milwaukee, Wis., for plaintiff-appellee.

Before SWYGERT, Circuit Judge, BAUER, Circuit Judge, and GRADY,[1] District Judge.

GRADY, District Judge.

This case arises under Title 18 of the Social Security Act, 42 U.S.C. Section 1395 *et seq.*, which establishes the Health Insurance For the Aged and Disabled Program, commonly referred to as "Medicare." The action was commenced on June 2, 1976, by the United States, plaintiff-appellee, against Dr. H. G. Withrow, formerly doing business as Hustisford Hospital, defendant-appellant, to collect alleged overpayments made to appellant during the years 1966–1969 as a provider of services under the Medicare program.

Appellant moved the district court to dismiss the action as barred by limitations, 28 U.S.C. Section 2415.[2] The court denied the motion with respect to the years 1967 through 1969, but granted it as to 1966. Summary judgment for $24,921.00 was entered in favor of the Government. Dr. Withrow now appeals that decision, solely on the ground that the action was barred by 28 U.S.C. Section 2415. We affirm.

From July 1, 1966, through October 31, 1969, appellant, doing business as Hustisford Hospital, at Hustisford, Wisconsin, participated in the Medicare program of the Social Security Act, 42 U.S.C. Section 1395, *et seq.*, as a "provider of services." Under the Medicare program, a provider of services does not charge Medicare beneficiaries directly, but receives payment for services provided ("reimbursement") from the Medicare fund. 42 U.S.C. Section 1395cc(a) (1)(A). Pursuant to 20 C.F.R. Section 405.405, the provider of health services may receive interim reimbursement payments in advance from organizations which serve as fiscal intermediaries between the Secretary of Health, Education and Welfare and the provider. Appellant's interme-

---

1. Judge John F. Grady of the United States District Court for the Northern District of Illinois, Eastern Division, is sitting by designation.

2. The parties agree that this statute of limitations applies to the case.

diary was Associated Hospital Service, Inc., an agent for Blue Cross of Wisconsin. The interim payments procedure was established under the terms of 42 U.S.C. Section 1395f(b) and 20 C.F.R. Section 405.451(a), requiring that providers be paid only the reasonable costs of their services. Interim payments are advanced to the provider on the basis of estimated costs for a given accounting period, usually one calendar year. Within three months following the end of each accounting period, the provider is required to submit reports indicating the actual costs incurred. The intermediary must then audit the reports and determine how the interim payments compare to the actual costs. 20 C.F.R. Section 405.-454(f)(1). Based on the results of the audit, a final adjustment is made. 20 C.F.R. Section 405.454(f)(2). If the provider is dissatisfied with the determination of the intermediary, or if the intermediary does not act in a timely fashion after receiving the cost report, the provider may obtain a hearing before a Provider Reimbursement Review Board, whose decision would be final and judicially reviewable. 42 U.S.C. Section 1395oo.

On May 16–17, 1972, the intermediary in the present case completed audits of appellant's cost reports for the period 1966–1969, and found that a net overpayment of approximately $25,000.00 had been made to appellant. On June 2, 1976, the United States filed suit in the district court to collect this amount.

■ The statute of limitations applicable to suits brought for overpayments to providers of health services in the Medicare program is 28 U.S.C. Section 2415(a), which provides in pertinent part:

Subject to the provisions of section 2416 of this title, and except as otherwise provided by Congress, every action for money damages brought by the United States or an officer or agency thereof which is founded upon any contract express or implied in law or fact, shall be barred unless the complaint is filed within six years after the right of action accrues or within one year after final decisions have been rendered in applicable administrative proceedings required by contract or by law, whichever is later . . . . .

The United States contends, and the court below found, that in cases brought to recover overpayments to providers, the "right of action accrues," for purposes of 28 U.S.C. Section 2415(a), when the audit has determined the final liabilities of the parties. Appellant, on the other hand, argues that the cause of action accrued on October 31, 1969, when appellant closed the hospital and ceased to function as a provider of health services under the Medicare program.

Appellant characterizes the Medicare reimbursement plan as being an "open account," in which a running balance exists, such that at any time the figures can be totalled to determine what is owed to whom. We believe this view is erroneous. Participants in the Medicare program, such as appellant, agree to provide health services subject to the conditions imposed in the Social Security Act, and all regulations promulgated thereunder. These regulations distinguish the reimbursement procedure from an open account with a shifting balance. Here, the parties clearly operate under an understanding that at some time *after* the end of an accounting period, an audit will be done by the intermediary. 20 C.F.R. Section 405.454(f) specifically states that

[a]ctual costs reimbursable to a provider cannot be determined *until the cost reports are filed and costs are verified.* Therefore, a retroactive adjustment will be made at the end of the reporting period to bring the interim payments made to the provider during the period into agreement with the reimbursable amount payable to the provider for the services rendered to program beneficiaries during that period. (emphasis added).

Both parties here clearly contemplated that only after the audit by the fiscal intermediary could either party be liable to the other. Prior to the time of the audit, neither party had a cause of action against the other. The Supreme Court's reasoning in *Crown*

*Coat Front Co., Inc. v. United States,* 386 U.S. 503, 87 S.Ct. 1177, 18 L.Ed.2d 256 (1967) supports this position. In that case, a contractor had agreed for various reasons, to a reduction in the price to be paid by the government for products delivered by the contractor on December 14, 1956. In October 1961, pursuant to procedures set out in the contract, the contractor filed a claim with a contracting officer, whose decision was final unless appealed from, seeking an equitable adjustment of the purchase price. This claim was denied, and on February 28, 1963, the Board of Contract Appeals affirmed the contracting officer's decision. On July 31, 1963, more than six years after he had completed performance of the contract, the contractor brought suit challenging the decision of the Board of Contract Appeals. The United States asserted that the suit was time-barred by the statute of limitations found at 28 U.S.C. Section 2401, which provides that "[e]very civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." The Government argued that limitations had started to run in 1956, when performance under the contract was completed. The Supreme Court, addressing the question of when the "right of action first accrue[d]," stated:

> In our opinion, if [the contractor's] claim arose under the contract, it first accrued at the time of the final decision of the Armed Services Board of Contract Appeals, that is, *upon the completion of the administrative proceedings contemplated and required by the provisions of the contract.*
>
> \* \* \* \* \* \*
>
> But whether and to what extent an adjustment is required are questions to be answered by the methods provided in the contract itself. The contractor must present his claim to the contracting officer, whose decision is final unless appealed for final action by the department head or his representative, here the Armed Services Board of Contract Appeals. Until that Board has acted, the contrac-

tor's claim is not subject to adjudication in the courts.

386 U.S. at 511, 87 S.Ct. at 1181, 1182 (emphasis added).

In support of his analogy to an open account, appellant relies on *Unexcelled Chemical Corp. v. United States,* 345 U.S. 59, 73 S.Ct. 580, 97 L.Ed. 821 (1953). We believe that reliance is misplaced. In *Unexcelled,* the United States brought an action under the Walsh-Healey Act, 41 U.S.C. Section 35 *et seq.,* to recover liquidated damages from a government contractor who knowingly employed child labor in violation of that Act. The applicable statute of limitations, 29 U.S.C. Section 255, provided that "every such action shall be forever barred unless commenced within two years after the cause of action accrued." The government argued that the suit was timely because the cause of action accrued, and the two-year period began to run, only after it was administratively determined by the Department of Labor that the contractor was liable to the government. Rejecting this reasoning, the Court found that " 'the cause of action accrued' . . . when the minors were employed. That was the violation of the Walsh-Healey Act, giving rise to the liability for liquidated damages." 345 U.S. at 65, 73 S.Ct. at 583. The Court went on to state that "a cause of action is created when there is a breach of duty owed by the plaintiff." *Id.* In the present case, we believe that there was no breach of duty by the appellant on October 31, 1969, when he ceased to operate as a provider of health services. No duty was owed to the United States until the rights and liabilities of the parties were determined in the audit made by the intermediary on May 16 and 17, 1972. It was at this time that the right of action accrued, and the limitations period began to run.

Appellant next argues that the intermediary's audit cannot trigger the running of the six-year limitations period, because the audit is an "applicable administrative proceeding required by contract or law," and therefore triggers the one year limitation period. We agree with appellant that Congress could not have intended the

one-year period in section 2415 to be superfluous. Thus we hold that the "applicable administrative proceedings" in section 2415 refers not to the intermediary's audit, but to the proceedings of the Provider Reimbursement Review Board, which hears appeals by providers from final decisions of fiscal intermediaries. 42 U.S.C. Section 1395oo. Since no appeal was taken by the provider in this case, no "applicable administrative proceeding" occurred and we have no occasion to apply the one year limitation provision. There will be other cases, however, in which the provider will appeal to the Board, and the Board might not decide the case until more than six years after the completion of the audit. In such a case, the one year provision would have an obvious purpose. It would "permit the government a year after the final administrative decision in which to present its case for judicial determination." 112 Cong.Rec. 14379 (1966).

■ Finally, appellant argues that to hold that the cause of action accrues at the completion of the intermediary's audit is to give the government an unlimited amount of time to cause an audit to be completed.[3] As noted earlier, a provider has adequate recourse when the audit is delayed. Under the procedures set out at 42 U.S.C. Section 1395oo and 20 C.F.R. Section 405.1835, a provider who has filed a cost report but has not received a final determination from an intermediary within twelve months thereafter is entitled to a hearing before the Provider Reimbursement Review Board. Since the provider has this right to demand a hearing if the audit is not timely made, we believe there is no danger that a provider interested in a determination of his rights and liabilities will be unfairly prejudiced if the government's cause of action is deemed to accrue upon completion of the audit. The only provider who would be unable to counteract delay by the government would be one who had not filed the cost reports, and we believe that such a

provider, having failed to avail himself of the self-help provided by 42 U.S.C. Section 1395oo, is not in a position to complain of delay by the government. We note that in the present case, appellant did not file a cost report for the period from January 1, 1969, through October 31, 1969, and cost reports for the other relevant periods were filed after the time provided by regulation.

In summary, we hold that the government's cause of action in this matter accrued with the completion of the intermediary's audits on May 16 and 17, 1972. Thus, the commencement of this action on June 2, 1976, was timely within the six-year statute of limitations, 28 U.S.C. Section 2415. This holding is consistent with the positions taken by numerous district courts. *See e.g., United States v. Normandy House Nursing Home, Inc.*, 428 F. Supp. 421 (D.Mass.1977); *United States v. Woodside Medical, Inc.*, Civil No. 5–71230 (E.D.Mich., filed August 12, 1977); *United States v. Gottlieb*, 424 F.Supp. 417 (S.D.Fla.1976).

AFFIRMED.

---

**3.** We note that several of the district courts that have dealt with similar factual situations have expressed some sympathy for this position, *see United States v. Normandy House Nursing Home, Inc.*, 428 F.Supp. 421, 423 (D.Mass.1977); *United States v. Woodside Medical, Inc.*, Civil No. 5–71230, n. 4 (E.D. Mich., filed Aug. 12, 1977), and that the United States in the present case does not respond to appellant's argument on this point.