**UNITED STATES of America,**
**Plaintiff-Appellant,**

v.

**UPPER VALLEY CLINIC HOSPITAL,**
**INC. and Lower Valley Clinic,**
**Defendants-Appellees.**

**No. 78–1693.**

United States Court of Appeals,
Fifth Circuit.

April 10, 1980.

David B. Palmer, Atty., Dept. of H. E. W., Baltimore, Md., for plaintiff-appellant.

Pearson & Caballero, Raymond C. Caballero, El Paso, Tex., for defendants-appellees.

Before TUTTLE, AINSWORTH and SAM D. JOHNSON, Circuit Judges.

SAM D. JOHNSON, Circuit Judge:

This is an appeal by the United States from a grant of summary judgment for the defendants, Upper Valley Clinic Hospital and Lower Valley Clinic (hereinafter the "Hospital"). The United States filed suit under 28 U.S.C. § 1345, seeking a refund

from the Hospital for alleged Medicare overpayments. The district court granted summary judgment for the Hospital on the ground that the cause of action was time-barred. We hold that the suit is not barred by the statute of limitations and remand for trial.

*The Act*

The Medicare Act (hereinafter the "Act"), 42 U.S.C. § 1395 *et seq.*, creates two types of federally funded medical assistance for the aged and disabled. Part A of the Act, the part applicable in the case at bar, authorizes financial assistance for inpatient hospital services and certain services following inpatient hospital care. Patients who qualify for aid under Part A receive their medical services free of charge. The Government, usually through fiscal intermediaries,[1] then reimburses the "providers" for the services rendered.

At the time the Hospital was providing Medicare services, reimbursement was typically accomplished pursuant to one of two schemes. One plan envisioned full payment on an annual basis after the Medicare services were rendered. The provider of Medicare services (in this case, the Hospital) was to submit cost reports to its intermediary (in this case Blue Cross Association/Group Hospital Service, Inc.) at the end of each fiscal year. The intermediary (Blue Cross) then audited the report, ascertained the reasonable costs of the reimbursable services provided, and tendered the full amount due to the provider of Medicare services.

Alternatively, the provider of medical services could receive interim payments (made at least monthly) based upon *estimates* of its reimbursable services. Within

three months of the end of the fiscal year, the provider of Medicare services was to submit a report to the intermediary (here, Blue Cross) detailing its actual costs. The intermediary (Blue Cross) was to then audit the report and make a retroactive adjustment, either giving the provider of services a credit or seeking a refund of a portion of the interim payments. This alternative scheme, still used today, has one substantial advantage: the provider of Medicare services does not have to go for an extended period of time within reimbursement for Medicare expenses. This was the repayment plan that the Hospital used.

*Facts*

From July 1, 1966 until September 21, 1969, the Hospital participated in the Medicare program as a "provider of services." It received reimbursement for its efforts from the intermediary, Blue Cross Association/Group Hospital Service, Inc. (hereinafter "Blue Cross"), on an interim basis, based upon estimates of the probable value of its reimbursable services. As discussed above, the Hospital, at the close of the fiscal year, was supposed to submit a cost report to Blue Cross so that Blue Cross could make appropriate retroactive adjustments.[2]

In April 1968 the Hospital submitted its cost report for the year July 1, 1966—June 30, 1967. Blue Cross had an accounting firm audit this report, and, in March 1969, determined that the Hospital had received more Medicare funds than they were entitled to under law. In late 1970, after some accounting clarifications, Blue Cross determined that the Hospital received interim

---

1. Fiscal intermediaries are organizations with an expertise in the administration of third-party payment health plans that contract with the Secretary of Health, Education and Welfare to furnish day-to-day administrative services to the Medicare program. In essence, they serve as HEW's agents for many of the program's functions, including fund disbursement. *Mount Sinai Hospital of Greater Miami, Inc. v. Weinberger*, 517 F.2d 329, 334 (5th Cir. 1975), *cert. denied*, 425 U.S. 935, 96 S.Ct. 1665, 48 L.Ed.2d 176 (1976).

2. In the 1960's the Hospital's duty to submit a cost report within three months after the close of the reporting period was not mandatory. It was not until October 1972 that a federal regulation was promulgated requiring cost reports to be submitted within three months of the close of the period covered by the report and within 45 days after a provider of Medicare services experienced a change of ownership or terminated participation in the Medicare program. 42 C.F.R. § 405.453(f)(2) (1979). The interaction between this regulation and the statute of limitations is not before this Court.

overpayments of $13,853 for the fiscal year 1966–1967. Blue Cross then issued the document "Retroactive Cost Adjustment—Final" by December 9, 1970, requesting payment of the monies.

While Blue Cross was auditing the Hospital's 1966–1967 cost report, it was also trying to get the Hospital to file reports for the subsequent years. In October 1968 the Hospital requested an extension of time in which to file its report for the fiscal year July 1, 1967—June 30, 1968. Blue Cross granted the extension. On January 4, 1969 Blue Cross granted a second extension based upon a representation by one of the Hospital's administrators that the cost report was basically complete, but that the Hospital's accountants needed certain information from the (at that time) unfinished audit of the 1966–1967 report. When September 1969 rolled around *sans* report, Blue Cross threatened to cut-off the Hospital's *current* interim payments. Finally, on September 21, 1969, the Hospital closed the inpatient component of its facility and ceased participation in the Medicare program.

This severance did not end the reporting dispute. The Hospital still had not filed reports for July 1, 1967—June 30, 1968; July 1, 1968—June 30, 1969; and July 1, 1969—September 21, 1969. In October 1969 Blue Cross informed the Hospital that there could be no final settlement of the Medicare accounts until the outstanding reports were filed. In March 1970 the Hospital and Blue Cross agreed that Blue Cross's auditors would prepare the reports for the Hospital based upon records the Hospital was to furnish. Nothing ever came of this agreement.

At this point Blue Cross began making collection demands. On December 9, 1970, Blue Cross wrote the Hospital a letter indicating that *all* interim payments since July 1, 1967 were deemed *overpayments* and must be refunded. Blue Cross threatened court action and stated that it was referring the matter to the General Accounting Office. In the last paragraph of the letter Blue Cross noted: "Filing an acceptable Medicare cost report immediately will eliminate us proceeding with this matter." The letter produced no action.

On July 30, 1971 Blue Cross sent the Hospital a collection letter for only the $13,853 in overpayments from the first reporting period. This letter produced a response. Approximately one month later, in early September, the Hospital's accountant acknowledged that the reports were due and promised them. The accountant stated that he had been re-employed to prepare the reports and that he had been working on them for nine months.

In December 1971 the Hospital's accountant again wrote to Blue Cross, without prompting from Blue Cross, and promised the reports. He indicated that parts of the report were complete, but that he anticipated further delay. He stressed that "all due care and speed" was being exercised and promised the reports "as required." This promise was renewed in early 1974, and the Hospital stated that the three overdue reports would be ready by the fall. The reports never were prepared and the Hospital never refunded the alleged $13,853 overpayment for 1966–67.

On December 27, 1976 the United States brought this action to recover $357,208.47 in overpayments. $13,853 of this amount represented the overpayment for the period July 1, 1966—June 30, 1967. The remainder constituted *all the interim Medicare payments* received by the Hospital from July 1, 1967 to September 21, 1969, the period for which the Hospital failed to file cost reports.

The district court granted summary judgment for the Hospital, holding that the six year statute of limitations, 28 U.S.C. § 2415(a), barred the cause of action. The court held that the overpayment claim based on the audited report accrued by December 9, 1970, when Blue Cross issued the "Retroactive Cost Adjustment—Final" document to the Hospital. Since suit was not filed until December 26, 1976, this claim was time barred. The Government *does not* appeal from this ruling. The district judge also held that the overpayment claim

based on the failure to file a report from July 1, 1967—September 21, 1969 accrued by January 1, 1970. The court reasoned that the reports were due within three months of the end of the reporting period. The last report was due December 31, 1969. The causes of action for these overpayments accrued by that time. Since suit was not filed until December 26, 1976, over six years later, these claims were also time-barred. The Government brings this appeal from the district judge's second ruling.

## Cause of Action

■ The Hospital initially argues that we need not reach the statute of limitations question because the Government has no cause of action for the recovery of payments when the provider of Medicare services fails to submit cost reports. We find this contention to be without merit.

42 U.S.C. § 1395g[3] creates the interim payment procedure and provides for "necessary adjustments on account of previously made overpayments or underpayments . . . ." The statute contemplates the Government "making corrective adjustments for improper payment of Medicare monies . . . ." *Springdale Convalescent Center v. Mathews*, 545 F.2d 943, 952 (5th Cir. 1977). It has been recognized that this scheme includes the right to file suit for alleged overpayment of the reasonable costs of services after the provider of Medi-

care services' cost reports have been audited. *United States v. Withrow*, 593 F.2d 802 (7th Cir. 1979). In *Withrow* the court also recognized that this right to file suit for overpayments encompasses the situation where the provider of Medicare services *fails* to file a cost report. *Id.* at 806.

We agree with the Seventh Circuit's conclusion that the Government has a cause of action for repayment where a provider of Medicare services does not submit a cost report.[4] A contrary determination would thwart the Medicare repayment scheme. Providers of Medicare services who determine that they have received more than their statutory entitlement in any given year could avoid having to reimburse the federal treasury by simply refusing to file a cost report. In light of the result it would produce, we reject the Hospital's contention that the Government lacks a cause of action.

## Statute of Limitations

■ The statute of limitations applicable to suits brought against providers of Medicare services for alleged overpayments is 28 U.S.C. § 2415(a).[5] *Withrow*. That section creates a six year period before a cause of action becomes time-barred. In the case at bar, the Government filed suit on December 27, 1976. The district court and both parties have focused on whether

---

3. 42 U.S.C. § 1395g provides:

   The Secretary shall periodically determine the amount which should be paid under this part to each provider of services with respect to the services furnished by it, and the provider of services shall be paid, at such time or times as the Secretary believes appropriate (but not less often than monthly) and prior to audit or settlement by the General Accounting Office, from the Federal Hospital Insurance Trust Fund, the amounts so determined, with necessary adjustments on account of previously made overpayments or underpayments; except that no such payments shall be made to any provider unless it has furnished such information as the Secretary may request in order to determine the amounts due such provider under this part for the period with respect to which the amounts are being paid or any prior period.

4. This cause of action is not for failure to file cost reports, but rather that the failure to sub-

mit cost reports indicates that interim payments to providers were excessive.

5. 28 U.S.C. § 2415(a) provides:

   (a) Subject to the provisions of section 2416 of this title, and except as otherwise provided by Congress, every action for money damages brought by the United States or an officer or agency thereof which is founded upon any contract express or implied in law or fact, shall be barred unless the complaint is filed within six years after the right of action accrues or within one year after final decisions have been rendered in applicable administrative proceedings required by contract or by law, whichever is later: *Provided*, That in the event of later partial payment or written acknowledgment of debt, the right of action shall be deemed to accrue again at the time of each such payment or acknowledgment: . . . . .

the cause of action accrued before December 27, 1970. We do not find it necessary to resolve this difficult question because the Hospital's express written promises in 1971 that they would supply the appropriate cost reports created a new legal obligation, one not barred by the statute of limitations in December 1976.

The action for Medicare overpayments is one that sounds in contract. Contract law recognizes that a debtor's new promise to pay an existing obligation begins anew the prescriptive period.

> If a debtor makes a new promise to his creditor to pay his existing debt, no bar having yet arisen, this promise is enforceable, being sufficiently supported by the existing legal duty of the promisor. . .
> *In such a case, the creditor's remedy on the new promise is not barred by statutory limitation until the lapse of the full period counting from the time of breach of this new promise. Such a promise extends the time for enforcement.*

1A A. Corbin, Contracts § 214 (1963) (footnote omitted) (emphasis added).[6] Application of this principle to the facts in the case at bar establishes that the Government's cause of action was not time barred in December 1976.

In September and December of 1971 the Hospital's accountant promised Blue Cross that the unfiled cost reports would be submitted as quickly as possible. These reports are used, of course, to determine whether the interim payments to a provider of Medicare services, like the Hospital, have been inadequate or excessive. When the Hospital made the promises in 1971, they renewed their liability for excessive interim payments. Thus, the Government's suit, filed in December 1976, fell within the time period provided by 28 U.S.C. § 2415(a).

*The Reports*

At oral argument the Government reiterated its position that it is not interested in recovering all the interim Medicare payments made to the Hospital, but only that part which was excessive.[7] In light of the Government's position, the Hospital is given the opportunity to submit cost reports for the periods July 1, 1967—June 30, 1968; July 1, 1968—June 30, 1969; and July 1, 1969—September 21, 1969. The Hospital shall have 60 days from the issuance of this Court's mandate to file the appropriate reports with the United States Attorney.[8]

*Conclusion*

The Government has a cause of action against the Hospital and it is not barred by the statute of limitations. The case is remanded for further proceedings. Additionally, the Hospital is given sixty (60) days from the issuance of this Court's mandate to file the cost reports with the United States Attorney.

**REVERSED AND REMANDED.**

---

**6.** This fundamental tenet has been applied to 28 U.S.C. § 2415. *United States v. Gardner,* 528 F.2d 715 (6th Cir.), *cert. denied,* 426 U.S. 954, 96 S.Ct. 3181, 49 L.Ed.2d 1193 (1976).

**7.** The failure of the Hospital to file any report, however, has deprived the Government of its ability to determine whether payments to the Hospital were excessive or inadequate.

**8.** Failure of the Hospital to submit complete and accurate cost reports within the time designated shall create a conclusive presumption that all interim Medicare payments from July 1, 1967, through September 21, 1969, are overpayments.