**UNITED STATES of America, Appellant,**

v.

**GRAVETTE MANOR HOMES, INC., and Hall Enterprises, Inc., d/b/a Gravette Medical Center, Appellees.**

**No. 80–1442.**

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 13, 1981.

Decided Feb. 27, 1981.

232

Wendy M. Keats, Alice Daniel, Asst. Atty. Gen., Washington, D. C., Larry P. McCord, U. S. Atty., Fort Smith, Ark., Anthony J. Steinmeyer, Patricia G. Reeves, Attys., Civil Division, U. S. Dept. of Justice, Washington, D. C., for appellant.

Jimmy Eaton, Charles S. Embry, Jr., Pine Bluff, Ark., for appellees.

Before HEANEY, ROSS and ARNOLD, Circuit Judges.

ARNOLD, Circuit Judge.

These actions were filed by the United States under 28 U.S.C. § 1345 to recover overpayments to two Medicare providers. These consolidated cases are before this Court on appeal by the United States from a final judgment of the district court. On cross-motions for summary judgment, that court ruled that all but one of the government's claims were barred by the six-year statute of limitations in 28 U.S.C. § 2415(a). We reverse.

The essential facts in these cases are not in dispute. The United States filed these suits to recover overpayments made to defendants while defendants were providing services under the Medicare program. 42 U.S.C. §§ 1395 *et seq.* Defendants were two skilled nursing facilities in Gravette, Arkansas. The program provides for reimbursement of participating hospitals and nursing homes by the Department of Health and Human Services (formerly the Department of Health, Education, and Welfare) for the reasonable costs of services provided to the elderly. Pursuant to 42 U.S.C. § 1395h, Arkansas Blue Cross and Blue Shield had been designated as the fiscal intermediary through which defendants were reimbursed for the reasonable cost of covered medical services.

The parties have stipulated to the following facts. Both Gravette Manor Homes and Hall Enterprises have discontinued their participation in the Medicare program. Hall participated in the Medicare program (Part A-Hospital Insurance Program) from July 1, 1966, to July 1, 1971. Gravette participated in the same program from January 1, 1967, to October 1, 1970. During these periods of time both defendants furnished services to Medicare beneficiaries and were entitled to reimbursement for the reasonable cost of such services under 42 U.S.C. § 1395(b). Both Gravette and Hall received interim payments on at least a monthly basis from the intermediary, Arkansas Blue Cross and Blue Shield.

Defendants were required to furnish cost reports to the intermediary each year in order that the intermediary might determine how much was properly due defendants under the Medicare program. 42 C.F.R. §§ 405.406, 405.454. The intermediary was required to make a retroactive adjustment at the end of each cost-reporting period to bring the interim payments into conformity with the amount properly payable to defendants for actual services furnished to program beneficiaries.

The intermediary determined that Hall was overpaid by $13,950.00 during its years of participation in the program, and that Gravette Manor Homes was overpaid by $16,178.00. Both sides agree that the statute of limitations to be applied in these cases is set forth in 28 U.S.C. §§ 2415 and 2416. The only issue to be determined is whether these claims of the United States for Medicare overpayments are barred by limitations.

■ Reimbursement to providers is governed by a series of regulations found in 42 C.F.R. §§ 405.401 *et seq.* The reimbursement scheme is premised on the assumption that the providers will be advanced funds periodically to cover their estimated costs and that adjustments must be made later when analysis of their reports reveals the actual cost of covered services. Interim payments are subject to retroactive adjustment. *Springdale Convalescent Center v. Mathews,* 545 F.2d 943 (5th Cir. 1977). There are actually three times of payment or adjustment:[1] the interim payments during the fiscal year, which are made not less than monthly; the initial retroactive adjustment made as soon as the annual cost report is filed; and the final determination made after a later audit, if any is required. This procedure is described in part in 42 C.F.R. § 405.454(f)(2):

(2) In order to reimburse the provider as quickly as possible, an initial retroactive adjustment will be made as soon as the cost report is received. For this purpose, the costs will be accepted as reported—unless there are obvious errors or inconsistencies—subject to later audit. When an audit is made and the final liability of the program is determined, a final adjustment will be made.

The sole question at issue in this case is at what point in this reimbursement process the liability of the parties becomes sufficiently fixed to cause the applicable statute of limitations to begin to run.

In relevant part, the applicable statute reads:

(a) Subject to the provisions of section 2416 of this title, and except as otherwise provided by Congress, every action for money damages brought by the United States or an officer or agency thereof which is founded upon any contract express or implied in law or fact, shall be barred unless the complaint is filed within six years after the right of action accrues . . . .

28 U.S.C. § 2415. Section 2416 tolls the limitations period under certain circumstances:

For the purpose of computing the limitations periods established in section 2415, there shall be excluded all periods during which—

\*    \*    \*    \*    \*    \*

(c) facts material to the right of action are not known and reasonably could not be known by an official of the United States charged with the responsibility to act in the circumstances . . . .

The government contends that no right of action accrued until a final determination of liability had been made by the intermediary and a Notice of Program Reimbursement had been sent to defendants.[2] De-

---

1. An overpayment for an earlier period may be deducted from current interim payments or set off against any amount owed the provider for underpayment in any other period.

2. The following dates are taken from the parties' stipulation of facts, plaintiff's sworn Answers to Interrogatories, and the affidavit of Harvey Cohen of the Bureau of Program Policy of the Health Care Financing Administration. Defendants do not dispute the accuracy of this information.

GRAVETTE MANOR HOMES

| Year | Cost Report Submitted | Desk Review Begun | Desk Review Completed | Audit | Final Determination | Notice Sent |
|------|------|------|------|------|------|------|
| 1967 | 5–21–68 | 7–18–68 | 7–18–68 | 1–29–69 | 6–8–72 | 6–8–72 |
| 1968 | 8–27–71 | 9–15–71 | 12–22–71 | – | 6–8–72 | 6–8–72 |
| 1969 | 1–10–72 | 1–14–72 | unknown | – | 6–8–72 | 6–8–72 |

HALL ENTERPRISES, INC.

| Year | Cost Report Submitted | Desk Review Begun | Desk Review Completed | Audit | Final Determination | Notice Sent |
|------|------|------|------|------|------|------|
| 1969 | 3–18–70 | 3–19–70 | unknown | 10–27–71 | 2–25–72 | 2–25–72 |
| 1970 | 2–26–71 | 3–3–71 | unknown | 10–27–71 | 2–25–72 | 2–25–72 |

fendants contend that the statute should run from the date of the completion of the audit for each of the years in question. The district court held that the "cause of action for recoupment of Medicare overpayments accrued when the audit was completed. On that day, the plaintiff reasonably should have known whether it had a cause of action for recoupment of overpayments for the calendar year in question."

Generally a right of action accrues when the occurrence of the final significant event necessary to create the claim. On the other hand, "the period of limitations does not always begin on the date of the wrong." *United States v. One 1961 Red Chevrolet Impala Sedan*, 457 F.2d 1353, 1358 (5th Cir. 1972). In the present case, the overpayments to Gravette and Hall were actually made during the fiscal years 1967–1970, when the nursing homes received interim reimbursement payments. No one argues, however, that the statute should run from the date of payment.[3]

■ After examination of the relevant regulations and statutes and the record in this case, we choose to follow the reasoning of *United States v. Graham*, 471 F.Supp. 123 (S.D.Tex.1979), which held that the government's cause of action accrues with the making of the final retroactive adjustment, referred to in note 2 above as the final determination, which sets the exact amount of overpayment or underpayment due from or to a provider. Although in many cases the government (through its agent, the intermediary) may know at the completion of the audit that some overpayment may have been made, the exact amount due from the provider, if any, is not set until the official of the intermediary who has the authority to approve and certify the yearly audits has done so. Significant changes may be made in this final determination, involving either corrections of the amount due for the year in question, or revisions with respect to other years, either prior or subsequent.

Under the regulatory procedures promulgated pursuant to 42 U.S.C. § 1395g, the amount of the overpayment or underpayment is not determined until "an audit is made and the final liability of the program is determined." 42 C.F.R. § 405.454(f)(2). The date of the audit and the date of the final determination of liability are not necessarily the same. In the present case, final determination of liability was not made until the audits were reviewed by G. Alex Smith, the official at Arkansas Blue Cross and Blue Shield with the authority to review and approve audits and make overpayment determinations. According to the interrogatories and affidavits filed in this case,[4] Mr. Smith reviewed and approved the audits of Gravette's cost reports on July 8, 1972, and reviewed and approved Hall's audits on February 25, 1972.[5]

Defendants argue that their position that the cause of action accrues on the date of the initial audit is supported by three reported cases. *United States v. Withrow*, 593 F.2d 802 (7th Cir. 1979); *United States v. Normandy House Nursing Home, supra;*

---

3. This argument was made and rejected in *United States v. Normandy House Nursing Home, Inc.*, 428 F.Supp. 421 (D.Mass.1977). The date of the filing of the annual cost report has also been rejected in *United States v. Gottlieb*, 424 F.Supp. 417 (S.D.Fla.1976).

4. See note 2 *supra*.

5. In both cases Notices of Program Reimbursement were sent to Gravette and Hall Enterprises, respectively, on the same date as the final determination of liability was made. We do not hold that the cause of action accrues when the notice is sent. It accrues when the final determination of liability (the final retroactive adjustment) is made, whether or not the government notifies the provider on that date. See *United States v. Graham, supra*, 471 F.Supp. at 125. *Accord, United States v. White House Nursing Home, Inc.*, 484 F.Supp. 29 (M.D.Fla.1979).

*United States v. Gottlieb, supra.* None of those cases, however, specifically addressed the issue presented here. In each case, the defendant was arguing that the statute of limitations began to run at some stage in the reimbursement process prior to the date of audit. In all three cases the audit date was within the six-year statute of limitations. The defendant in *Withrow* contended that the statute began to run when he closed his nursing home and ceased to be a Medicare provider. The court held, however, that there was no breach of duty on that date and that no duty was owed the United States until the rights and liabilities of the parties were determined by the intermediary's audit. The audit is characterized as determining the "final liabilities of the parties." *Withrow, supra,* 593 F.2d at 804. There is no way to tell from the opinion whether the audit date in question in *Withrow* was the date of the actual completion of the audit or the date of acceptance and approval by the intermediary. For that reason, the case is not in point. Both *Normandy House* and *Gottlieb* present similar situations. As in the *Withrow* case, the date of audit was within the six-year limitations period, and defendants were arguing that the statute should run from an earlier date, i. e., the dates on which interim payments were made or the date the cost report was filed. Neither of these cases specifically addresses the issue of whether the audit is final on the date it is completed or on the date it is accepted and approved by the appropriate official.

One final argument by the appellees should be addressed. They argue that the government will have too much control over the running of the statute if the statute is triggered by the intermediary's act of "final retroactive adjustment" rather than completion of the audit. But even the rule proposed by defendants puts that power in the government's hands.[6] The problem has been resolved as to fiscal years starting in 1973 by amendments to the Social Security Act which established a Provider Reimbursement Review Board. Social Security Amendments of 1972, Pub.L. 92–603, 86 Stat. 1420. Under these procedures, now codified in 42 U.S.C. § 1395oo, a provider who has filed a cost report but has not received a final determination within twelve months thereafter is entitled to a hearing before the Provider Reimbursement Review Board. The provider will therefore have the power to force determination of liability within a reasonable time.

Because the statute of limitations found in 28 U.S.C. § 2415(a) began to run on the date of the final determination of liability, the cases against both Gravette and Hall Enterprises were filed within the six-year limitations period. Accordingly, since the parties have stipulated in the district court as to the appellees' indebtedness, the district court's grant of summary judgment in favor of Gravette and Hall Enterprises is reversed. This case is remanded for entry of judgment in favor of the United States.

It is so ordered.

---

6. The district court relied on the tolling provisions of 28 U.S.C. § 2416(c), which we have quoted. We agree that this subsection is relevant not only to tolling, but also to the accrual of a cause of action. It would be open to a defendant, in a proper case, to contend that the final determination was unreasonably delayed, beyond the time when a responsible official of the intermediary should reasonably have known all material facts. No such question is presented by this record. Both sides moved for summary judgment. No one contended that there was any genuine issue of fact sufficient to require a trial.