UNITED STATES of America,
Plaintiff-Appellant,

v.

ROBERT'S NURSING HOME, INC. and
Robert W. Burton,
Defendants-Appellees.

No. 82–2459.

United States Court of Appeals,
Seventh Circuit.

Argued April 21, 1983.

Decided June 30, 1983.

Harold R. Bickham, Asst. U.S. Atty., Sarah Evans Barker, U.S. Atty., Indianapolis, Ind., for plaintiff-appellant.

Sydney L. Berger, Berger & Berger, Evansville, Ind., for defendants-appellees.

Before POSNER, NICHOLS * and COFFEY, Circuit Judges.

NICHOLS, Circuit Judge.

This action was filed pursuant to 28 U.S.C. § 1345 by the United States on Feb-

---

* The Honorable Philip Nichols, Jr., of the United States Court of Appeals for the Federal Circuit, is sitting by designation.

ruary 23, 1978, to recover amounts allegedly overpaid to appellees, defendants below, Robert's Nursing Home, Inc., and Robert W. Burton (appellees), from January 1, 1967 through May 31, 1970, while appellees were participating as a provider of services in the Medicare program. 42 U.S.C. § 1395 *et seq.* The district court entered judgment in favor of the appellees, concluding that the United States was barred from recovery in this matter by the statute of limitations. We affirm.

Under the Medicare program, appellees agreed to provide services to the elderly in return for reimbursement by the Department of Health and Human Services (Department) (formerly the Department of Health, Education and Welfare) for the reasonable costs of such services. 42 U.S.C. § 1395f(b). Pursuant to an agreement under 42 U.S.C. § 1395h, appellees were reimbursed by Mutual Hospital Insurance, Inc., a/k/a Blue Cross and Blue Shield of Indiana, the designated fiscal intermediary. In order to alleviate possible cash flow problems for a provider, the intermediary is required to make interim payments to a provider "not less often than monthly" and prior to any audit of the cost reports of the provider. 42 U.S.C. § 1395g; 20 C.F.R. § 405.454 (20 C.F.R. § 405 later recodified at 42 C.F.R. § 405). Although these interim payments are intended to "approximate the actual costs as nearly as is practicable," overpayments and underpayments by the intermediary to the provider are anticipated.

A provider of services is required to submit annual cost reports to the intermediary. 20 C.F.R. § 405.406. On the evidence of such reports, the intermediary compares the total amount of reimbursement due the provider with the total interim payments made, and determines the amount of overpayment or underpayment made to the provider, if any, for the period reflected in the cost report. After this comparison, an initial retroactive adjustment is made "as soon as the cost report is received," subject to later audit. "When an audit is made and the final liability of the program is determined, a final adjustment will be made."

20 C.F.R. § 405.454(f). Thus, this regulatory scheme allows interim payments to be made based on estimated costs but provides that the final liability of the provider and the government under the program will not be determined until an audit of the cost reports of the provider is completed.

Appellees filed cost reports for periods ending December 31, 1967, June 30, 1968, and June 30, 1969. No cost reports were filed for periods ending December 31, 1969, and May 30, 1970. Appellees assert that the intermediary and its accountants informed them that they did not have to file cost reports for the latter two periods, thus waiving the filing requirement. By letter dated December 14, 1970, however, the intermediary notified appellees that all interim payments received during the periods for which no cost reports were filed were now deemed overpayments and immediately due and payable. The text of this letter states:

> We have not received your cost reports for the periods ending December 31, 1969, and May 31, 1970.
>
> On September 28, 1970, * * * you agreed to submit the reports to our office by October 31, 1970.
>
> Since the reports have not been received, and in accordance with Social Security Administration regulations, all payments you have received from Medicare since the first day of the prior reporting period are now deemed overpayments. This gives an aggregate total due the program of $218,094.99 and is arrived at as follows:

| | |
|---|---|
| Claims Overpayments | $ 62,997.99 |
| Audited 12/31/67 Cost Report | 84,768.00 |
| Audited 6/30/68 Cost Report | 25,431.00 |
| (includes $10,167.00 T.S. never received) | |
| Tentative Settlement 12/31/68 C.R. | 44,898.00 |
| Total Due Program | $218,094.99 |

> Please make your check payable to Mutual Hospital Insurance, Inc., and forward it to my attention.
>
> If it becomes necessary for the Federal Government to sue in a court of law to collect this amount, interest at the legal

rate will be assessed and collected as part of the judgment rendered by the court.

If you cannot comply with this request, please contact us immediately.

Audits of the periods for which cost reports were on file were undertaken by the accounting firm of Ernst & Ernst on behalf of the intermediary. An audit completed July 16, 1970, determined an overpayment of $84,768 for the period ending December 31, 1967, and an overpayment of $25,431 for the period ending June 30, 1968. The audit of the cost report for the period ending June 30, 1969, was completed by Ernst & Ernst on December 31, 1970, and determined that an overpayment of $41,640 was made. These overpayment figures are based on the accountants' computation of reimbursement due the intermediary, plus the effect on reimbursement of owners' compensation. Each of the accountants' reports stated that the audits were subject to the determination of the reasonableness and allowability of owners' compensation by the intermediary.

According to the evidence before us, the intermediary first notified appellees of the aggregate total allegedly due the Medicare program in the aforementioned letter of December 14, 1970.

The government concedes that the letter of December 14, 1970 was an initial demand for payment, but argues that the computations were subject to a determination of the allowability of owners' compensation by the intermediary. Apparently due to a lack of sufficient guidelines from the Department, this determination of allowability was not made by Ernst & Ernst, as it noted in its audit reports. The letter to the providers, however, demands payment of a definite sum and does not mention any subsequent adjustment after a determination of allowability of owners' compensation. The government also notes that the amount listed as owing for the period ending December 31, 1968, was a "tentative settlement" and was computed prior to the Ernst & Ernst audit for that period. This tentative settlement amount was approximately $3,200 more than the amount Ernst & Ernst later found due for this period.

On January 14, 1971, the intermediary notified appellees by letter that their file would be referred to the Bureau of Health Insurance (BHI) (now the Health Care Financing Administration) for collection of the $218,094.99 due the program in accordance with Social Security regulations. The file was referred to BHI on March 11, 1971.

In April 1971, the Department issued new guidelines for determining owners' compensation.

On February 29, 1972, the intermediary completed what the government refers to as a "post-audit." According to the government, this post-audit consisted of an examination of the Ernst & Ernst audit report and the proposed adjustments, a determination that those adjustments were in accordance with federal regulations and policies, and a resolution of all unsettled issues. Since such a post-audit did not involve returning to the provider books and records, it could not tell the intermediary any facts it did not already know. On April 22, 1972, the General Accounting Office certified appellees' indebtedness to the United States for the sum of $203,568.99. On April 27, 1972, the intermediary mailed demand letters to the provider stating that the post-audit review had been completed and the following amounts were due: $79,140 for periods ending December 31, 1967; $13,173 for periods ending June 30, 1968; and $2,919 for periods ending June 30, 1969. On May 15, 1972, the intermediary sent a revised letter stating the amounts due for the latter two periods were $23,340 and $47,817, respectively. After the provider failed to pay the amounts due, this suit was filed in district court.

The parties agree that 28 U.S.C. § 2415 is applicable in this case. In relevant part, the statute reads:

(a) Subject to the provisions of section 2416 * * * every action for money damages brought by the United States or an officer or agency thereof which if founded upon any contract express or implied in law or in fact, shall be barred unless

the complaint is filed within six years after the right of action accrues. * * *

The district court found that the government's cause of action was barred as it accrued on December 14, 1970, when a demand for payment was made by the intermediary, or by March 11, 1971, when the provider's file was referred to the Bureau of Health Insurance for collection. The government contends, however, that its cause of action did not accrue until February 29, 1972, when the intermediary completed its post-audit, or alternatively on April 27, 1972, when the intermediary made its final determination of an overpayment.

In cases brought to recover overpayments to providers under the Medicare program, this court has held that the government's right to action accrues with the completion of the intermediary's audit. *United States v. Withrow*, 593 F.2d 802 (7th Cir.1979). There, the government successfully argued that the statute of limitations began to run when the audit had determined the final liabilities of the parties rather than, as the provider argued, when the hospital ceased to function as a provider of services under the program. The *Withrow* decision, however, does not state whether the "audit" referred to in that case was the "audit" conducted by the intermediary or an accounting firm on its behalf, or whether it was a "post-audit" conducted later. Furthermore, the facts of the *Withrow* case do not show whether a demand letter was sent to the provider, or whether the provider was aware that the "audit" was subject to later adjustments. The *Withrow* decision, however, appears to equate the date the statute of limitations begins to run with the time an obligation becomes due and owing. The court stated:

Both parties here clearly contemplated that only after the audit by the fiscal intermediary could either party be liable to another. Prior to the time of the audit, neither party had a cause of action against the other.

[593 F.2d at 804.]

The intermediary in the case before us sent written notice to the appellees on December 14, 1970, that $218,094.99 was due the program. This letter did not state that the amount due was subject to future adjustments or revisions. Rather, it specifically invited the appellees to "make your check payable to Mutual Hospital Insurance, Inc. * * *." Furthermore, it warned appellees that "[i]f it becomes necessary for the Federal Government to sue in a court of law to collect this amount, interest at the legal rate will be assessed and collected as part of the judgment rendered by the court." No suggestion was made by the government that this letter was written without authority or was otherwise contrary to any collection procedures established by contract, statute, or regulation. In fact, the government conceded at oral argument that the intermediary was acting as an agent of the government, although it may have "pushed the panic button" in writing to appellees demanding payment of $218,094.99. As testimony in the record indicates, this letter is a demand for repayment of an overpayment addressed to the provider, a demand that could not have been made unless the intermediary determined that there was an overpayment and a debt due the government. It is an admission that all the facts have occurred that are necessary to establish liability.

Under the particular facts of this case, then, the government argues that although the intermediary, acting on behalf of the government, determined that an obligation was due and owing the government and demanded payment of a specified amount from the provider on December 14, 1970, the government's right to action did not accrue until some 14 months later. Such a contradictory position cannot, in our view, be persuasive. A demand for payment cannot be made unless one party determines that another party is liable to it. Once liability is established, a cause of action accrues and the statute of limitations begins to run. We therefore hold that the government's claim accrued sometime prior to the intermediary's demand letter of December 14, 1970. As this date is more than 6 years before the government's filing of

suit for collection on February 23, 1978, we hold that the suit is barred by 28 U.S.C. § 2415.

Our decision here does not conflict with the recent case of *United States v. Gravette Manor Homes,* 642 F.2d 231 (8th Cir.1981) relied on by the government to support its position. There, the district court held that the "cause of action for recoupment of Medicare payments accrued when the [initial] audit was completed." 642 F.2d at 234. On appeal, the Eighth Circuit reversed and relied on the regulatory scheme in holding that the government's cause of action accrues when a final retroactive adjustment is made establishing the exact amount of overpayment or underpayment due from or to a provider. Although the factual situation in both cases is similar, there apparently was no demand for payment or notice of overpayment sent to the provider in the *Gravette Manor Homes* case prior to the final adjustment.

■ The government seeks to avoid the bar of the statute of limitations by arguing that the statute was tolled during the applicable time period. The government points to 28 U.S.C. § 2416, which provides in pertinent part as follows:

> For the purpose of computing the limitations periods established in section 2415, there shall be excluded all periods during which * * *
>
> (c) facts material to the right of action are not known and reasonably could not be known by an official of the United States charged with the responsibility to act in the circumstances.

The modern law of discovery counsels against deferring accrual of a money claim after all the events have occurred that fix liability. *See Japanese War Notes Claimants Ass'n v. United States,* 178 Ct.Cl. 630, 373 F.2d 356, *cert. denied,* 389 U.S. 771, 88 S.Ct. 466, 19 L.Ed.2d 461 (1967). Running may be suspended if the plaintiff is ignorant he has a claim, as there stated, but the claim accrues, even if the claimant does not know the exact amount due and owing, or some of the facts to establish liability, for these can be discovered after action is filed.

Thus, a claim may accrue even when, as here, it is subject to later adjustment as to the final amount. A party cannot send such a letter as the intermediary did here, and then urge that it does not yet know the exact amount owing, and some internal cogitation is necessary, whereby the claim is not accrued after all.

The government presents two factual grounds for applying the tolling provision in this case. First, it cites the language of a letter dated March 11, 1971, written by the intermediary to the BHI in conjunction with the referral of the provider's file for collection. The letter states that the "December 31, 1967, June 30, 1968, and June 30, 1969, cost reports have not been finalized due to the lack of information in determination of owners' compensation. The provider was requested personally to submit the documentation needed but the information was never received." The government, however, has not shown that this information requested from the provider was essential for a determination of liability, or otherwise was a fact "material to the right of action." In fact, the government filed this suit without obtaining the documentation from the provider it now claims was necessary to its cause of action. We find it very unpersuasive that, for purposes of tolling the statute of limitations, this documentation should be considered to contain "facts material to the right of action" even though the government has never received such information yet was still able to file suit. We hold that the lack of information concerning owners' compensation was not sufficient to toll the running of the statute of limitations in this case.

Second, the government contends that the statute of limitations was tolled due to requests by the provider for hearings and delays for settlement purposes, and because collection efforts were halted by the government for a 17-month period. The district court, however, found no evidence that the provider sought any type of delay, but did note that the evidence showed that the delays were due in large part to the action or nonaction of the intermediary.

The government has not argued that these findings are unsupported by the evidence, nor has it attempted to establish that the findings of the district court are clearly erroneous. The government's argument that the provider caused the delay in the filing of the suit is conclusory, without support in the record, and totally without merit.

 Finally, the government attempts to avoid the bar of the statute of limitations by contending that a new cause of action arose through the writing of three letters by appellees' counsel in 1974. These letters, according to the government, contain "promises" which started anew the running of the statute. The district court found, however, that all correspondence from appellees' counsel were efforts to compromise a settlement of the matter, and not new promises. We agree.

In the letters relied on by the government, appellees' counsel requested that the necessary forms be sent regarding the periods for which the government states no cost reports were received. These letters also assured the intermediary that such forms would be promptly completed for the purpose of compromise of the claim. The provider clearly stated in the first letter its position that the intermediary's claim was not valid because the filing of the cost reports were waived at the time of the audit by Ernst & Ernst; the remaining correspondence explicitly notes the provider's interest in compromising the claim. The decision in *United States v. Upper Valley Clinic Hospital, Inc.,* 615 F.2d 302 (5th Cir.1980), on which the government relies, is clearly distinguishable, as there is no language here expressly acknowledging the existence of an unconditional debt, nor is there language explicitly or implicitly promising to pay an existing obligation. Accordingly, we hold that the statute of limitations did not begin to run anew with the writing of these letters.

In summary, we hold that the government's cause of action in this matter accrued prior to December 14, 1970 and thus is barred by the statute of limitations, 28 U.S.C. § 2415. For reasons stated above, the judgment of the district court entered in favor of appellees is

AFFIRMED.