**UNITED STATES of America, Plaintiff,**

v.

**CONTEMPORARY HEALTH MANAGEMENT OF HARDIN COUNTY, INC. d/b/a Hardin Medical Center, and Hardin County, Texas, Defendants.**

No. 1:91–CV–0773.

United States District Court,
E.D. Texas,
Beaumont Division.

Nov. 5, 1992.

---

**48**

O. Kenneth Dodd, Asst. U.S. Atty., Beaumont, Tex., for plaintiff.

David Fisher, Orgain, Bell & Tucker, Beaumont, Tex., for defendants.

## MEMORANDUM OPINION

COBB, District Judge.

The United States, plaintiff, brings suit against Hardin County, Texas, defendant, to recover overpayments made to Contemporary Health Management of Hardin County, Inc., (d/b/a Hardin Memorial Hospital and Hardin Medical Center), defendant, under the Social Security Act (Medicare), 42 U.S.C. § 1395 *et seq.* The United States and Hardin County move for summary judgment.

Hardin Memorial Hospital, Kountze, Texas, was constructed as a county hospital under Vernon's Ann.Civ.St. at 4478. From its inception in 1966 until March 1982, it was owned and operated by Hardin County, Texas, which maintained the hospital's status as a Medicare "provider" under the Medicare Act, 42 U.S.C. § 1395g.

On March 17, 1982, Hardin County leased the hospital (later renamed Hardin Medical Center) to Contemporary Health Management of Hardin County, Inc., ("CHM"), for a period of twenty years. Government regulations under Medicare stipulate that while provider status is automatically transferred from lessor to lessee, the lessee must obtain recertification and execution of a new provider agreement. 42 C.F.R. § 489.18.

Under the lease agreement, Hardin County agreed to assist CHM in obtaining recertification of the hospital as a Medicare provider (Lease § 20.2), to retain liability for Medicare payments prior to the lease (§ 20.1); and, in relevant part, to appoint a Community Advisory Board "to provide" information concerning the community's health care needs, "to provide" information concerning the overall performance of the hospital, "to participate" in a quality assurance program, "to assist" in the development of a program for the medically indigent of the county, and "to provide" review of that program (§ 20.5).

For its part, CHM agreed, *inter alia,* to be liable for Medicare payments subsequent to the lease (§ 20.1) and to use its best efforts to obtain certification as a Medicare provider (§ 20.3). On July 13, 1982, CHM obtained recertification of the hospital's provider status by the Department of Health and Human Resources. Defendant's Exhibit A.

The hospital participated in the Medicare program until April 16, 1986. Blue Cross and Blue Shield, the fiscal intermediary making interim payments to CHM for services rendered under Medicare, 42 U.S.C. § 1395f(b), 42 C.F.R. § 413.64, determined that CHM had been overpaid for fiscal years 1983, 1984, 1985 and 1986. These debts remained unpaid, and the government commenced suit for reimbursement on August 21, 1991.

■ The defendant asserts the statute of limitations as an affirmative defense. The government's cause of action is barred "unless the complaint is filed within six years after the right of action accrues," 28 U.S.C. § 2415(a), excluding periods during which "facts material to the right of action are not known and reasonably could not be known by an official of the U.S. charged with the responsibility to act in the circumstances," 28 U.S.C. § 2416.

No duty is owed to the United States under § 2415 until the rights and liabilities of the parties are determined. *United*

*States v. Withrow,* 593 F.2d 802, 805 (7th Cir.1979). Under the Medicare Act, the Department of Health and Human Resources is notified of overpayments made or reimbursements due by the fiscal intermediary's Notice of Payment Reports. 42 C.F.R. § 405.1803(a), (c). In this case, for the fiscal years 1983 and 1984, overpayment reports were issued on April 25, 1986, and March 5, 1986, respectively. As the government brought this action on August 21, 1991, its suit as to those years is not barred. *See, United States v. Robert's Nursing Home, Inc.,* 710 F.2d 1275 (7th Cir.1983).

Notice of Payment Reports are predicated on the Medicare provider's cost reports, which must be submitted no later than three months after a cost period. 42 C.F.R. §§ 405.406(b), 405.453(f)(2). The Fifth Circuit has held that failure to file a cost report is a cause of action. *U.S. v. Upper Valley Clinic Hospital, Inc.,* 615 F.2d 302 (5th Cir.1980). Consequently, as the provider has three months to file, it is upon the expiration of that period that the government's cause of action accrues.

Here, the hospital did not submit cost reports for fiscal years 1985 and 1986. For the cost period ending December 31, 1985, the hospital's cost report was due by March 31, 1986; for the period ending April 15, 1986, the cost report was due by July 15, 1986. 42 C.F.R. § 405.453(f)(2), and (f)(2)(iii). Thus, the six-year limitations commenced to run on April 1, 1986, and July 16, 1986, for fiscal years 1985 and 1986, respectively. As the government brought this action on August 21, 1991, the suit as to those years is not barred.

Both the United States and Hardin County have moved for summary judgment. A party is entitled to summary judgment only if it meets "the exacting burden of demonstrating that there is no actual dispute as to any material fact in the case." *Landry v. Air Line Pilots Association International AFL–CIO,* 901 F.2d 404, 424 (5th

Cir.1990) (citing *Impossible Electronics Techniques, Inc. v. Wackenhut Protective Systems, Inc.,* 669 F.2d 1026, 1031 (5th Cir. Unit B 1982)). The court must view the evidence and all factual inferences in the light most favorable to the opposing party, resolving all reasonable doubts in its favor. If any factual issues exist, or if reasonable minds might differ on the inferences arising from undisputed facts, the motion for summary judgment must be denied. However, once the movant has made and supported its motion, the adverse party may not rest upon "mere allegations or denials" but must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

■ In this instance, the Court must determine whether there exists an issue of material fact as to CHM's agency status under the lease.[1]

■ Under Texas agency law, the essential element is the "right of control" of the purported agent by the purported principal. *Matter of Carolin Paxson Advertising, Inc.,* 938 F.2d 595 (5th Cir.1991) (collecting cases). "The alleged principal must have the right to control both the means and the details of the process by which the alleged agent is to accomplish his task." *Id.* at 598.

■ The government's contention of agency primarily rests on the fact that the county has a right to appoint a Community Advisory Board under paragraph 20.5 of the lease agreement, which reads as follows:

*Community Advisory Board.* During the Lease Term, Lessor shall from time to time establish, and appoint persons to be members of, a Community Advisory Board ("Community Board"), which Community Board shall seek to accomplish the following goals:

a) Provide Lessee information concerning the general health care needs of the community served by the Hospital;

1. Contrary to the defendant's assertions, a lease agreement can give rise to an agency relationship in Texas law. *See, e.g., Nichols v. Acers Co.,* 415 S.W.2d 683 (Tex.Civ.App.1967) (agency analysis applied to lessor/lessee); *Springer v. Health Motor Co.,* 261 S.W.2d 757 (Tex.Civ.App.1953) (no agency absent indicia of authority in lease).

b) Provide Lessee an organized mechanism whereby the Lessee will receive information from the community served by the Hospital concerning the perceived quality of patient care provided by, and the otherwise overall performance of, the Hospital;

c) Participate in Lessee's organized quality assurance program to assist Lessee in Lessee's monitoring of the quality of patient care provided by the Hospital;

d) Assist Lessee in Lessee's development of a program to appropriately provide for the required hospital care of the medically indigent citizens of Hardin County, Texas; and

e) Provide a mechanism for the review of any appeal by a person concerning any determination by Lessee regarding their status as a County Indigent Patient.

The appointment process to, and terms and qualifications of the members of, the Community Board shall be determined in accordance with such bylaws, rules and procedures as may from time to time be established by Lessor.

It is clear from the above that the county did not retain any control over the operation of the hospital under this provision. The rights to participate and assist do not constitute the right to control; CHM is free to ignore the Community Board's information and advice. While it may be argued that 21.5(e) might be construed to vest final authority in the board over all determinations of indigent patient status, which in turn might conceivably have some effect on Medicare payments, "[i]t is the facts and circumstances of the case, not just the words of the parties' agreement, that establishes an agency relationship." *Paxson* at 598. In this instance, there is no evidence before the Court that the county ever did appoint a Community Action Board or, if it did, that it ever served any of the functions listed above.

■ Finally, the government argues agency theories of apparent and implied authority, based on the fact that the hospital's interim director remained in her position after the lease was signed and on the fact that the hospital retained its original name for some time under the lease. However, by its own regulations and actions subsequent to the lease, the government was on notice and had accepted CHM as the Medicare provider for the hospital. Government regulations are clear that when a provider leases all or part of its facilities, such lease constitutes a change of ownership, 42 C.F.R. 489.18(a)(4), and "when there is a change of ownership, as specified in paragraph (a) of this section, the existing provider agreement will automatically be assigned to the new owner." 42 C.F.R. 489.18(c). A new provider agreement was signed between CHM and the U.S. after the lease was executed, naming CHM the new provider. Plaintiff's Exhibit C. A federal disclosure of ownership statement was filed by CHM as a corporate owner and was acknowledged and accepted by the Secretary of Health and Human Resources. Defendant's Exhibit A. Finally, all demands for reimbursement of Medicare overpayments in the years 1982 to 1986 were sent to CHM's corporate address, not to Hardin County, until 1992.

For the reasons given above, this Court finds that an agency relationship did not exist between CHM and Hardin County. Consequently, Hardin County's motion for summary judgment is GRANTED, and the plaintiff's motion for summary judgment is DENIED.