**UNITED STATES of America, Plaintiff,**

v.

**GLASS NURSING & CONVALESCENT HOMES, INC., Defendant.**

**No. C–1–81–400.**

United States District Court, S.D. Ohio, W.D.

Nov. 5, 1982.

Robert Behlen, Nicholas J. Pantel, Asst. U.S. Attys., Cincinnati, Ohio, Paul Young, Hillsboro, Ohio, for plaintiff.

Kenneth R. Hughes, Cincinnati, Ohio, for defendant.

## OPINION AND ORDER

SPIEGEL, District Judge:

This matter came before the Court for hearing on defendant's motion to dismiss claims set out in the complaint relating to paragraphs 7, 8, and 9 of the First Cause of Action, and paragraphs 2, 3, 4, and 5 of the Second Cause of Action (doc. 15), plaintiff's memorandum in opposition (doc. 17), and defendant's reply memorandum (doc. 19). The Court finds defendant's motion well-taken and hereby grants the motion on the grounds that the claims enumerated by defendant are barred by the statute of limitations provided in 28 U.S.C. § 2415(a).

Because the parties presented documents other than the pleadings in support of their positions, we have treated defendant's motion as one for summary judgment under Rule 56, Fed.R.Civ.P. Rule 12(b)(6), Fed.R. Civ.P. The narrow question, therefore, which we must decide is whether there is "no genuine issue as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The Court cannot try issues of fact on a Rule 56 motion, but is empowered to determine only whether there are issues to be tried. *In Re Atlas Concrete Pipe, Inc.,* 668 F.2d 905, 908 (6th Cir.1982). The moving party "has the burden of showing *conclusively* that there exists no genuine issue as to a material fact and the evidence together with all inferences to be drawn therefrom must be read in the light most favorable to the party opposing the motion." *Smith v. Hudson,* 600 F.2d 60, 63 (6th Cir.1979) (emphasis original). And, "while the movant's papers are to be closely scrutinized, those of the opponent are to be viewed indulgently." *Id.* at 63. "[T]he District Court [is] obligated to consider not only the materials specifically offered in support of the motion, but also all 'pleadings, depositions, answers to interrogatories, and admissions' properly on file and thus properly before [the] court." *Id.,* quoting Rule 56(c), Fed.R.Civ.P. Summary judgment "must be used only with extreme caution for it operates to deny a litigant his day in court." *Id.*

This is an action by the United States to recover alleged overpayments by the intermediary Nationwide Insurance made to defendant, Glass Nursing and Convalescent Homes. As providers of services under the Medicare program, 42 U.S.C. §§ 1395 *et seq.,* Glass Homes 1 and 5 were entitled to reimbursement for the lesser of the "reasonable cost" of or "customary charges" for the services they provided. 42 U.S.C. § 1395f(b). Defendant elected to have payments made to them through Nationwide Mutual Insurance Company which, pursuant to a contract with the Secretary of Health and Human Services, acted as fiscal intermediary.

The United States filed this action on April 14, 1981, alleging overpayments to Home 1 during cost years 1967, 1968, 1969, 1973, and 1974, and Home 5 during cost years 1967, 1968, 1969, 1970, 1971, 1972, 1973, and 1974. By Order of the Court and pursuant to Rule 53(c), Fed.R.Civ.P., this matter has been submitted to a special master who will make findings of fact (doc. 10). The Court, however, reserved all legal issues, including specifically the question of whether any of plaintiff's claims are barred by the statute of limitations. Defendant filed a motion to dismiss the claims based on alleged overpayments during 1967, 1968, 1969, and 1970, asserting that these claims are barred by the six-year statute of limitations.

The pertinent statute of limitations is found in 28 U.S.C. § 2415(a), which provides:

[E]very action for money damages brought by the United States or an officer or agency thereof which is founded upon any contract express or implied in law or fact, shall be barred unless the complaint is filed within six years after the right of action accrues or within one year after final decisions have been rendered in applicable administrative proceedings required by contract or by law,

whichever is later; *Provided,* That in the event of later partial payment or written acknowledgement of debt, the right of action shall be deemed to accrue again at the time of each such payment or acknowledgement....

Our first inquiry relates to the meaning of "within six years after the right of action accrues" as used in 28 U.S.C. § 2415(a). This action was filed April 14, 1981. It is necessary to determine at which point the statute began to run in order to determine what claims are barred.

We begin our analysis by observing how the United States Court of Appeals for the Sixth Circuit has interpreted the federal statute of limitations applied to Truth-in-Lending actions. In determining how to compute the time prescribed by 15 U.S.C. § 1640(e), our Court of Appeals held that the Truth-in-Lending Act "creates a cause of action and confers jurisdiction ... [which] is defined and circumscribed by the Act itself in a temporal, as well as a substantive sense." *Rust v. Quality Car Corral, Inc.,* 614 F.2d 1118, 1119 (6th Cir.1980). The Court concluded that the statutory language of section 1640(e), "*within* one year from the date of occurrence" (emphasis added) mandated a computation which includes the date of occurrence. Accordingly, the Court determined that where a plaintiff entered into an installment sales agreement on July 1, 1976, the statute of limitations began to run on that date, and thus suit filed on July 1, 1977 was time-barred. *Id.*

The Sixth Circuit's reasoning appears to be applicable to any federal statute of limitations. The statute of limitations applicable to the instant case bars the action unless the complaint is filed "*within* six years after the right of action accrues." 28 U.S.C. § 2415(a) (emphasis added). On the basis of the *Rust* rationale and the similarity between the language of the Truth-in-Lending statute of limitations and that of section 2415(a), we conclude that the date of filing of this lawsuit, April 14, 1981, requires us to dismiss any claim based upon an event which occurred prior to April 15, 1975.

However, there is an alternative method of computing time periods—that provided by Rule 6(a), Fed.R.Civ.P. Although the Sixth Circuit rejected the view that Rule 6(a) should be applied to federal statutes of limitations, *Rust, supra,* at 1119, other courts have concluded that Rule 6(a), is applicable. In *Lawson v. Conyers Chrysler, Plymouth, and Dodge Trucks, Inc.,* 600 F.2d 465 (5th Cir.1979), the Fifth Circuit found that the time period provided by the Truth-in-Lending statute of limitations, 15 U.S.C. § 1640(e), should be computed according to Rule 6(a). Rule 6(a) states that "the day of the act, event, or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included." Accordingly, the Fifth Circuit concluded that where plaintiff purchased a truck on January 31, 1977, suit filed on January 31, 1978 was timely. *See also Johnson v. Flemming,* 264 F.2d 322 (10th Cir.1959).

We assume without deciding that courts in the Sixth Circuit are required to follow *Rust* and interpret statutes of limitations by construing the statutory language, and not by utilizing the computation method of Rule 6(a). However, even if we were to use the 6(a) method, often described as the majority practice (4 *Wright & Miller, Federal Practice and Procedure: Civil* § 1163), the result would not be favorable to the United States. Under Rule 6(a), we would be required to exclude the date of the event which causes the statute to run, and to include the last day of the six years so computed. Thus, the date of filing of this lawsuit, April 14, 1981, would require us to dismiss any claim based upon an event which occurred prior to April 14, 1975. In other words, under a Rule 6(a) analysis, any claim based upon an event or act which occurred on or after April 14, 1975 is *not* barred by the six-year statute of limitations of 28 U.S.C. § 2415(a).

■ Reimbursement to providers under the Medicare program is governed by regulations found at 42 C.F.R. §§ 405.401 *et seq.* The intermediary makes monthly payments to providers based upon estimated monthly

costs. The provider must supply the intermediary with an annual cost report verifying the actual costs of services. On the basis of the annual cost report, which at this point is assumed to be accurate unless there are obvious errors or inconsistencies, the intermediary makes an initial retroactive adjustment. The cost report is then audited and a final retroactive adjustment is made.

The Government's cause of action accrues upon the making of the final retroactive adjustment. *United States v. Gravette Manor Homes,* 642 F.2d 231, 234 (8th Cir. 1981). The final retroactive adjustment is deemed to have occurred on the date when liability is finally determined. *Id.* The parties agree that the date upon which Notice of Program Reimbursement (NPR) is sent to providers is the date at which liability is finally determined.

The following undisputed dates are taken from an affidavit supplied by Herbert Bossen, Nationwide's Medicare Audits Manager during the periods in question (Exhibit A, B—doc. 19). We have included dates only for those cost years in which overpayments allegedly occurred.

GLASS HOME 1

| Cost Year Ending | Date NPR | Date of Settlement |
|---|---|---|
| 8–31–67 | 6–15–72 | 6–15–72 |
| 8–31–68 | 6–15–72 | 6–15–72 |
| 8–31–69 | 4–18–74 | 4–18–74 |
| 8–31–73 | 6–15–77 | 6–15–77 |
| 8–31–74 | 6–15–77 | 6–15–77 |

GLASS HOME 5

| Cost Year Ending | Date NPR | Date of Settlement |
|---|---|---|
| 8–31–67 | 6–15–72 | 6–15–72 |
| 8–31–68 | 6–15–72 | 6–15–72 |
| 8–31–69 | 4–18–74 | 4–18–74 |
| 8–31–70 | 4–18–74 | 4–18–74 |
| 8–31–71 | 9–13–78 | 9–29–78 |
| 8–31–72 | 9–29–78 | 9–29–78 |
| 8–31–73 | 9–29–78 | 9–29–78 |
| 8–31–74 | 9–29–78 | 9–29–78 |

It is obvious, as the United States concedes, that claims for cost years 1967 through 1970 are barred by the clear language of Section 2415(a).

■ However, the United States argues that Glass Nursing Homes made partial payments which brought them within the partial payment exception of Section 2415(a), and, secondly, that these partial payments constitute written acknowledgements of the debt within the second statutory exception. Under this theory, each partial payment/acknowledgement should be deemed as creating a new right of action which accrues as of the date of payment or acknowledgement.

In support of this theory, the United States alleges that on or about January 19, 1973, Glass Nursing Homes offered to repay Nationwide at a monthly rate of $500 for each of the two homes for 36 months. The transcripts of accounts, which are accepted as accurate by both parties, demonstrate that defendant did make periodic payments of from $275 to $1,000 from January 1973 through April 1975, but do not reveal what gave rise to the payments (Exhibits C, D—doc. 19). The transcripts also reveal that Nationwide credited Glass Home 1 with a $500 payment April 14, 1975, and Glass Home 5 with a $500 payment April 16, 1975. It is undisputed that the treasurer of Glass Nursing Homes, Joan Glass, issued and signed a check for $1,000 made payable to Nationwide on April 10, 1975 (affidavit of Joan Glass, Exhibit E—doc. 19). Defendant stated in court, and plaintiffs did not dispute, that this check was the basis for the April 14, 1975 credit to Home 1 and the April 16, 1975 credit to Home 5.

■ The United States insists that the two $500 credits constitute partial payment and a written acknowledgement of the debt. It is axiomatic, however, that part payment renews the statute of limitations only if made under circumstances which clearly permit the inference that the debtor recognizes the whole of the debt as an existing liability and makes the payment voluntarily with the intent to repay the debt. The burden is upon the party relying on the payment to prove that the part payment was intended to apply to the debt in question. *United States v. Wilder,* 13 Wall. (80 U.S.) 254, 256, 20 L.Ed. 681 (1871); Restatement (Second) of Contracts § 82(2)(b).

Rule 56(e), Fed.R.Civ.P., provides that where a motion for summary judgment is supported by affidavits, the non-moving party "may not rest upon the mere allegations or denials of his pleading, but ... by affidavits or as otherwise provided ... must set forth specific facts showing that there is a genuine issue for trial." Defendants in this action supported their motion for dismissal of certain claims as barred by the statute of limitations with plaintiff's answers to interrogatories. In response, the United States presented the transcript of accounts as evidence of part payments which renewed the statute of limitations. But the United States presented no evidence permitting us to infer that Glass Nursing Homes made these payments in recognition of any existing liquidated liability or with the requisite intent. The transcript is evidence only that Home No. 1 was credited with a $500 payment on April 14, 1975, and Home No. 5 with a similar payment on April 16, 1975.

■ However, even if plaintiff could be found to have presented sufficient evidence of a genuine issue with respect to whether the payments reflected in the transcripts of accounts constitute part payment so as to renew the statute of limitations, the undisputed facts clearly reveal that no payment was received April 14, 1975 or later so as to bring the payment within the statute of limitations. We agree with the parties that in the case of a check purported to be a part payment, the statute of limitations is renewed at the time of delivery. The United States, however, distorts the plain meaning of delivery when they assert that the dates of crediting (April 14 and 16, 1975) are proof of date of receipt. Such an argument, if accepted, would give the party relying upon the payment the power to determine when to credit, and thus the power to control when the statute of limitations is renewed.

The date of receipt is the critical date in determining delivery, for once the check is received, the recipient has possession and control of the check. On the issue of receipt, the United States presented nothing other than the assertion that "[t]he accounts were credited within one or two days of receipt of the checks" (doc. 17, p. 6). An assertion is not proof, especially where, as here, the single check in issue is dated April 10, and there is a sworn affidavit to the fact that defendant's practice was to issue checks by mail on the date they were signed and dated (affidavit of Joan Glass). In fact, the assertion itself defeats the plaintiff, for if credits were posted "within one or two days of receipt," then the check must have been received and the statute of limitations begun to run at the latest April 13, one day prior to the April 14 posting.

The United States then asserts that the periodic payments shown on the transcript of accounts constitute written acknowledgement of the debt. This argument fails for similar reasons. The only evidence (and that was presented by the defendant) which can conceivably be construed as a writing by the defendant is the $1,000 check dated April 10, 1975 and signed by Joan Glass. There is no reference on the check to any debt. And, even if the United States could prove that the check was a written acknowledgement, they failed to prove that the acknowledgement occurred on April 14, 1975, or later, so as to bring the act within the statute of limitations.

The undisputed facts clearly demonstrate that with respect to cost years 1967, 1968, 1969, and 1970 there was no event or occurrence in the form of an NPP, a partial payment, or a written acknowledgement of debt occurring April 14, 1975 or later. Thus, the defendant is entitled as a matter of law to dismissal of claims for these years.

The United States, however, in its memorandum opposing defendant's motion, asserts that the parties consented to a repayment schedule as evidenced by the periodic payments by Glass to Nationwide beginning in 1973. Plaintiff argues that defendant's failure to pay in May 1975 constituted a breach of the agreement which renewed the six-year statute of limitations. The United States concludes that this action, filed April 14, 1981, is thus within the six-year period.

The United States, however, failed to submit affidavits which would give rise to a genuine issue for trial. The transcript of accounts is evidence only that Glass made periodic payments, not that those payments were pursuant to any agreement. Plaintiff insists that on or about January 19, 1973 "defendant *offered* to repay" the overpayments (p. 8, doc. 17) (emphasis added). Plaintiff adds that the offer was to repay Nationwide at the monthly rate of $500 for each home for 36 months. Further, according to plaintiff, this January 1973 "offer" provided for adjustments to the rate of payment "April 1, 1976" [sic] and June 1 and August 1, 1973. "The adjustment made on August 1, 1973, was to ensure that the defendant's total liability to the Medicare program would be eliminated within 36 months. (Vol. I, Bosen Affidavit ¶ 9; Vol. II, Bosen Affidavit ¶ 9)" (p. 8, doc. 17). Plaintiff, however, submitted no evidence to support this alleged offer. The references to the Bosen affidavit refer to documents which are with the special master; no copies were supplied to the Court.

When questioned by the Court, counsel for the United States referred to a letter dated January 19, 1973 from defendant to Nationwide which allegedly proposed a repayment schedule. Plaintiff relies upon this document as establishing an agreement. That letter, however, was not before the Court, although the United States did present it in a post-hearing supplemental submission of documents (doc. 24). We decline to consider these supplemental submissions. The Court did not request them, plaintiff did not move to have them introduced, nor did plaintiff show good cause for their tardy submission. Further, the supplemental documents are unaccompanied by any affidavit attesting to their authenticity or source, or indeed by any indication of where they might be found in the documents turned over to the special master.

▆ A non-moving party cannot avoid summary judgment by trying to create a material issue of fact through allegation and the attempt to support that allegation by the tardy unsolicited submission of un-sworn documents. Rule 56(e), Fed.R.Civ.P. *See Turner v. Lundquist*, 377 F.2d 44, 47–48 (9th Cir.1967).

Even if we were to consider the documents submitted by the United States after the hearing, we would not find that they create a genuine issue for trial. The documents include Nationwide's Second Demand Notice to defendant dated December 21, 1972, and the defendant's letter of January 19, 1963 to Nationwide with attached financial statements (Exhibits A, B—doc. 24). The January 19 letter was accurately described by plaintiff as an "offer." Nationwide's second demand notice makes it clear that the proposed repayment schedule cannot be other than an offer:

> [W]e repeat our previous requirements for your *requesting* a repayment schedule. All repayment schedules must be approved by the SSA Chicago Regional Office ... (p. 2, Exhibit A) (emphasis added).

Further, defendant states in the January 19 letter that it "requests" a repayment schedule (p. 1, Exhibit 13). Plaintiff submitted no evidence that the offer was accepted. It is a fundamental principle of contract law that an offer standing alone does not create an agreement. The United States contends, however, that the periodic payments made by Glass from 1973 to 1975 as recorded on the transcripts of accounts are evidence that defendant's January 19 offer was accepted. There is nothing, however, in the transcripts linking the periodic payments to the January 19 letter.

The United States alleged the existence of a repayment schedule in response to defendant's assertions that some of plaintiff's claims were time-barred. The burden is thus upon the plaintiff—even though the non-moving party—to provide the Court with sufficient evidence to raise a genuine issue of material fact. 10 *Wright & Miller, Federal Practice and Procedure: Civil* § 2734. Plaintiff failed to meet that burden.

Plaintiff also insists that the January 19, 1973 letter constitutes a written acknowledgement of the debt. Again, however, if

we were to consider the letter, we would be unpersuaded by plaintiff's argument. To suffice as a written acknowledgement of a debt, the circumstances must be such as to allow a court to infer that the acknowledgement was voluntary and was in recognition of a specific liquidated debt. Restatement (Second) of Contracts § 82(2)(a). The letter itself precludes such an inference. The letter was prompted by Nationwide's demand notice stating that if Glass Nursing Homes did not immediately submit a repayment schedule for approval, the matter would be referred to the General Accounting Office (Exhibit A, doc. 24). Furthermore, Nationwide asserted that defendant's debt totaled $151,143, yet the total payments under the alleged repayment schedule, as counsel for the United States admitted in open court, amounted to only $36,000 —considerably less than the amount claimed by Nationwide. In the letter, defendant pointed out that it had objected to Nationwide's figures and would continue to challenge the accuracy of the amounts claimed by the intermediary. Finally, the financial sheets which accompanied defendant's January 19 letter do not reflect any debt owed to Nationwide with the possible exception of a liability identified on the June 30, 1972 balance sheet as "Advance— Medicare" for $8,036.00 (p. 7, Exhibit B). In sum, the post-hearing documents do not raise any genuine issue for trial, for on their face they as a matter of law do not constitute a written acknowledgement of debt. The acknowledgement, if indeed it arises to that level, of the January 19 letter, is clearly neither voluntary nor in recognition of a specific liquidated debt.

Accordingly, we conclude that if we were to consider the documents improperly submitted by plaintiff, we would not find that they create a genuine issue for trial. Plaintiff failed to present sufficient evidence to raise the existence of a repayment schedule and the documents themselves defeat the argument that the January 19 letter constitutes a written voluntary acknowledgement of a specific liquidated debt.

We hold that the United States has failed to demonstrate that there are any genuine issues of material fact with respect to the timeliness of claims based upon cost years 1967, 1968, 1969, and 1970. Accordingly, we hereby grant defendant's motion for summary judgment with respect to plaintiff's claims for alleged overpayments asserted in paragraphs 7, 8, and 9 of plaintiff's First Cause of Action and paragraphs 2, 3, 4, and 5 of plaintiff's Second Cause of Action as barred by the six-year statute of limitations of 28 U.S.C. § 2415(a).

SO ORDERED.