UNITED STATES of America, Plaintiff,

v.

Charles E. GOTTLIEB, Defendant.

No. 76–1600–Civ–JLK.

United States District Court,
S. D. Florida.

Dec. 27, 1976.

jurisdiction over both defendants may well be available. *See Houghton v. Piper Aircraft Corp.,* 112 Ariz. 365, 542 P.2d 24 (1975).

**418**

Patricia Jean Kyle, Asst. U. S. Atty., Miami, Fla., J. Christopher Kohn, Justice Dept., Washington, D.C., for plaintiff.

Theodore Klein, Miami, Fla., for defendant.

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND DENYING DEFENDANT'S MOTION TO STRIKE AND GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

JAMES LAWRENCE KING, District Judge.

This is an action brought by the United States to recover amounts allegedly overpaid to defendant, a "provider" of medical care under the Medicare Program of the Social Security Act, 42 U.S.C. § 1395 *et seq.* This court has jurisdiction pursuant to 28 U.S.C. § 1345.

### I.

Defendant moved this court to dismiss the action, raising the sole objection that the suit was not timely. 28 U.S.C. § 2415(a) the applicable statute of limitations, provides that such suits must be filed within six years "after the right of action accrues." In its reply to defendant's motion, the United States proffered the affidavit of one Marcelle H. Purcell, a Program Validation Specialist for the Social Security Administration, who testified as to the dates of certain auditing procedures, which dates were supposedly relevant to the statute of limitations issue. In reply, defendant moved this court to strike the Purcell affidavit, contending that its motion to dismiss should be considered from evaluation of the pleadings only, and that supplemental material must not be considered. Shortly thereafter, the United States moved for summary judgment.

■ It is error to consider matters outside of the pleadings in a motion to dismiss without first converting this motion into a motion for summary judgment under rule 56, Fed.R.Civ.P. *Herron v. Herron,* 255 F.2d 589 (5th Cir. 1958), *Tuley v. Heyd,* 482 F.2d 590 (5th Cir. 1973). Notice must be given to each party that the status of the action is now changed, and they must be given a "reasonable opportunity" to present legal and factual material in support of or in opposition to the motion for summary judgment. *Sims v. Mercy Hospital,* 451

F.2d 171 (6th Cir. 1971). In the instant case, however, it is unnecessary to treat defendant's motion to dismiss as a motion for summary judgment because plaintiff has moved for summary judgment, as it is permitted to do after 20 days from the commencement of the action. Fed.R.Civ.P. 56(a). Supporting affidavits are properly considered in such a motion, *Id.*, and the fact that they may have been filed with the Clerk of the Court before the filing of the motion should not disqualify them from consideration.

Local Rules 10(J)(1) for the Southern District of Florida provides that a party opposing a motion for summary judgment shall have 10 days from the date of the motion to submit opposing papers. Fed.R.Civ.P. 56(e) further provides:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

Defendant has, however, failed to respond as required by rule 56(e): he has not set forth any specific issues of fact allegedly in conflict. Instead, defendant has objected that he has had no time to make discovery to enable him to contradict the government's affidavit:

> The government has seen fit to unearth someone from the dankest recesses of its bureaucratic labyrinth to pen his name to an affidavit and before the defendant has had any opportunity to even discover whether that person is alive, dead, or more likely somewhere in between, it now says that it is entitled to summary judgment because the defendant has not contradicted the affidavit.

Defendant's position, while understandable, is not meritorious. Defendant should know, without detailed discovery, the basic facts of its own operation and the important dates of its own actions. It need not depose Mr. Purcell to obtain these. If defendant feels Mr. Purcell's version of the facts are in error, it should allege at least that these facts are material issues to be tried; but even this defendant has failed to do. Therefore, the inescapable conclusion is that there are no material facts in conflict, that at this stage in the proceedings, this case represents essentially a legal rather than a factual conflict. Accordingly, the court will now consider the "appropriateness" of plaintiff's motion for summary judgment. Fed.R.Civ.P. 56(e).

## II.

The medicare program, enacted under Title XVIII of the Social Security Act, 42 U.S.C. § 1395 *et seq.*, provides federal reimbursement to the aged for certain types of medical care, including hospital expenses. Hospitals, as providers of the medical care under the program, are reimbursed for the reasonable costs of their services rendered to Medicare beneficiaries. Reimbursement may be carried out either by the Secretary or, as in this case, by private organizations authorized to act as fiscal intermediaries pursuant to contract with the Secretary. 42 U.S.C. 1395h. These intermediaries are familiar with the billing procedures of health care providers, and they are used primarily to relieve the Social Security Administration of the day-to-day administrative burden of the program's operation.

The primary duty of the fiscal intermediary is the payment of funds to the provider. The intermediary acts only as a fiscal conduit, having no vested interest in any of the funds, 20 C.F.R. § 405.651(c). Its task involves ascertaining the amount of payment that accurately reflects the reasonable costs of services rendered by the provider to the Medicare beneficiaries. The payment process mandated by statute involves two steps. First, to ease the provider's cash flow problems, the intermediary makes estimated payments at, at least monthly intervals. Then, adjustments are made for overpayments or under payments based on yearly "cost reports" filed by the provider as re-

quired by 42 U.S.C. §§ 1395g, 1395x(v)(1) and 20 C.F.R. §§ 405.402(b)(1), (2); 405.454; 405.406(b):

> Actual costs reimbursable to a provider cannot be determined until the cost reports are filed and costs are verified. Therefore, a retroactive adjustment will be made at the end of the reporting period to bring the interim payments . . into agreement with the reimbursable amount payable to the provider . . . 20 C.F.R. § 405.454(f)(1).

Retroactive adjustment based on annual cost reports is in itself a two-step process. According to the regulations

> an initial retroactive adjustment will be made as soon as the cost report is received. For this purpose, the costs will be accepted as reported—unless there are obvious errors or inconstancies—subject to later audit. When an audit is made and the final liability of the program is determined, a final adjustment will be made. 20 C.F.R. § 405.454(f)(2).

The record reveals that defendant, a provider of medical services under the program, was reimbursed monthly by its intermediary, Blue Cross of Florida, for the calendar year 1967. Thereafter, it filed a cost report and was immediately assessed a sum representing an "initial adjustment" for overpayments, which sum it paid to the intermediary. A final audit was later conducted for this period, during which it was revealed that additional overpayments had in fact been made. A similar procedure was followed for the calendar year 1968, although in that year no "initial adjustment" was made. The provider ceased participation in the program after May of 1969. No initial adjustment was made for 1969, and thereafter the 1969 intermediary, Aetna Life and Casualty Company, directed a final audit for the 1969 program. After the conclusion of the final audits for the three program years, a special "post-audit review" authorized by 20 C.F.R. 405.415(d)(3) in cases when a provider terminates participation in a Medicare program, was performed. Thereafter, the provider was notified of its liability for overpayment. The overpayments, amounting to some $86,720, are the subject of this action.

The affidavits proffered by plaintiff and uncontested by defendant, reveals that cost reports and audits occurred on the dates specified:

| for Cost Report Period Ending | Cost Report Filed | Final Audit Completed | Post-Audit Review Completed |
|---|---|---|---|
| 12/31/67 | 10/24/68 | 1/11/71 | 2/9/71 |
| 12/31/67 | 6/3/69 | 1/22/71 | 2/9/71 |
| 5/31/69 | 5/21/70 | 12/24/70 | 2/9/71 |

Plaintiff filed this action on September 30, 1976. The applicable statute of limitations, 28 U.S.C. § 2415(a) reads in pertinent part:

> [E]very action for money damages brought by the United States or an officer or agency thereof which is founded upon any contract, express or implied, in law or fact, shall be barred unless the complaint is filed within six years after the right of action accrues.

### III.

■ The precise issue to be decided in this case is therefore whether the "right of action" accrued when defendant filed its cost reports or some time later when plaintiff, through an agent of the fiscal intermediary, completed an audit of defendant and ascertained the extent of overpayment. Metaphysically perhaps, at the instant an overpayment is made the payee may become liable to the payor. However, as the Fifth Circuit remarked in *United States v. One 1961 Chevrolet*, 457 F.2d 1353, 1358 (5th Cir.1972),

> [t]he period of limitations does not always begin on the date of the wrong . . . No cause of action generally accrues *until the plaintiff has a right to enforce his cause.* [citations omitted] (emphasis added)

There is little doubt that under the statutory scheme, no "final adjustment" is contemplated until "an audit is made and the final liability of the program is determined." 20 C.F.R. § 405.454(f)(2). If the parties do not agree to the "final adjustment," suits like this one arise. But no suit should be main-

tained until the final adjustment has been attempted as provided in the regulations. Therefore, until an attempted final adjustment, it cannot be said that plaintiff has a right to enforce his claim. Additionally, even after plaintiff could maintain a suit the statute of limitations is expressly tolled whenever "facts material to the right of action are not known and reasonably could not be known by [the plaintiff]." 28 U.S.C. § 2416. It is unnecessary to explore this provision, because the audits in the instant case were completed at the earliest on December 24, 1970, within the six-year statute of limitations.

■ Although there are few reported decisions on the matter, the Eastern District of Michigan recently held, as does this court, that the statutory scheme of the Medicare program contemplates that a cause of action for overpayment does not arise until after the government's final audit of the health care provider:

> The Act contemplates a "time gap" between the end of the accounting year and the time at which the correct amount payable to the provider can be computed. [citing 42 U.S.C. § 1395g] . . . The fact that a "time gap" is contemplated is further reflected in the regulations [citing 20 C.F.R. § 405.454(f)]. *United States v. Elliot General Hospital*, No. 6–70481–Civil (E.D.Mich. Oct. 1976).

The "time gap" sanctioned by the statute is of course the period between the submission of the annual cost report by the provider and the completion of the final audit by the government. Before the end of this gap, no cause of action for overpayment could be maintained and therefore no limitations period for such a cause of action can begin. It is therefore,

ORDERED and ADJUDGED that there being no substantial issues of fact to be tried and plaintiff being entitled to judgment as a matter of law, plaintiff's motion for summary judgment be and the same is hereby granted. It is further

ORDERED and ADJUDGED that in view of the court's action herein, defendant's motion to dismiss and defendant's mo-

tion to strike be and the same are hereby denied.