UNITED STATES of America, Plaintiff,

v.

Carol SAVARESE, as the personal representative for the Estate of J. Charles Savarese, D. O., Defendant.

No. 80-2678-CIV-EPS.

United States District Court,
S. D. Florida,
Miami Division.

May 29, 1981.

Clark D. Mervis, Asst. U.S. Atty., Miami, Fla., for plaintiff.

William John Mason, Miami, Fla., for defendant.

## MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

SPELLMAN, District Judge.

This cause came before the Court on cross motions for summary judgment. Having reviewed the record in this cause and being otherwise duly advised, it is hereby,

ORDERED AND ADJUDGED that Plaintiff's motion for summary judgment is GRANTED and Defendant's motion for summary judgment is DENIED.

This action was commenced by the United States of America to recover funds erroneously paid to J. Charles Savarese, D. O., under the Medicare program of the Social Security Act, 42 U.S.C. § 1395 *et seq.* The claim is based on a determination, made by the Secretary of Health, Education and Welfare (now Health and Human Services), through the carrier, Blue Shield of Florida, that Dr. Savarese received $108,290.82 in excess of the amount due him by the Medicare program. The amounts he received, which are asserted to be overpayments, were claims under Part B, 42 U.S.C. §§ 1395–1395w, assigned to him by patients for rendering medical services from 1968 through 1971.

Based on potential problems that were noted in Dr. Savarese's 1967 and 1968 office visits and ancillary services, a complete statistical sampling along with his utilization profile was referred to the Florida Osteopathic Medical Association for peer review. The State Osteopathic Review Committee met on October 11, 1969, and reviewed Dr. Savarese's utilization profile along with a

sampling of claims for 1968 and the first six months of 1969. The committee unanimously agreed that overutilization had occurred and recommended that his practice be reviewed in the future. *See* Plaintiff's Exhibit 14.

On May 22, 1976, the Florida Osteopathic Medical Association Peer Review Committee reviewed the office practice of Dr. Savarese for the years 1968 through 1972 after being requested to do so by the carrier. The committee found fifty (50) percent overutilization of office visits and seventy (70) percent overutilization of injections for 1968, thirty-five (35) percent overutilization of office visits and sixty (60) percent overutilization of injections for 1969, five (5) percent overutilization of office visits and ten (10) percent overutilization of injections for 1970 and 1971.[1] *See* Plaintiff's Exhibits 1, 2 and 9.

Based on the findings of the Peer Review Committee, the carrier determined that Dr. Savarese had been overpaid $108,720.42 for the years 1968 through 1972. *See* Plaintiff's Exhibit 8. A demand for that amount was sent to Dr. Savarese by the carrier on June 14, 1977. That demand letter advised Dr. Savarese that if he believed the determination was incorrect he could submit medical records for review. In addition, Dr. Savarese was informed that he could request a hearing within six months from the date of the letter. *See* Plaintiff's Exhibit 8. Dr. Savarese did not request a hearing, nor did he submit additional evidence; he did request that the carrier forward certain evidence to him.[2] *See* Plaintiff's Exhibit 7. On January 6, 1978, Dr. Savarese was informed that the time period for pursuing his administrative appeal had expired. Repayment of the overpayment was again demanded. See Plaintiff's Exhibit 6. When no response came in, Dr. Savarese's file was forwarded to the Regional Office of the Health Care Financing Administration. That office, on February 12, 1978, demanded that Dr. Savarese repay the overpayment. *See* Plaintiff's Exhibit 5. On March 6, 1978, Dr. Savarese, through his attorney, wrote to the Department of Health, Education and Welfare and suggested that, rather than rely on the administrative procedures for determining the amount of overpayments, "it might be a better procedure for all concerned that litigation ensue so that all of the Rules of Evidence, Burden of Proof, etc. can be afforded both sides in a Court of Law." See Plaintiff's Exhibit 4. By letter dated March 22, 1978, however, the Regional Office indicated that it was not their preference to pursue recovery through the courts and that, if Dr. Savarese decided to settle the matter, they would be pleased to work out an extended repayment schedule. Counsel for Dr. Savarese wrote the Regional Office on April 4, 1978 and declined to settle, stating "it is my client's position that the matter should be resolved through litigation, where the court system, speaking for all citizens, can determine whether the method of assessing overpayments has legal authority and ratification." A total of $429.60 due to Dr. Savarese was offset against the overpayment, leaving a principal balance of $108,290.82 due to the Government. This amount was demanded from Dr. Savarese on January 17, 1980, by a Certificate of Indebtedness sent to him care of his attorney. Unfortunately, Dr. Savarese had passed away in December of 1978. Accordingly, a claim for the amount of the indebtedness was filed against Dr. Savarese's estate on December 10, 1980, in the Circuit Court in and for Dade County, Florida.

It is the position of the United States that the factual determination of the existence of the overpayment, totalling $108,290.82 is not subject to judicial review because judicial review is precluded by the

---

1. The carrier later determined that there had been overutilization for 1972 as well.

2. Dr. Savarese also requested a six month extension of time due to his having undergone cancer surgery just prior to receipt of the demand letter. This request was denied by the Government.

Social Security Act.[3] Furthermore, even if judicial review were permitted, the Government contends that the decedent waived his right to judicial review of the determination because he refused to take advantage of his right to an administrative appeal. Plaintiff submits, therefore, that there is no genuine issue of fact to be tried and that Plaintiff is entitled to a judgment as a matter of law.

Defendant "questions the allegation that Dr. Savarese, Deceased, received $108,290.82 in excess of the amount due him by the Medicare Program." Defendant states, however, that she "cannot challenge this assertion because Defendant's deceased passed away in December 1978." Instead of contesting the amount of the alleged overpayments, Defendant has taken the position that the United States should be equitably estopped from collecting any of the overpayments from Dr. Savarese's estate based on the delay in instituting the present litigation and the resulting prejudice to Defendant.

■ Defendant's failure to pursue his administrative remedies precludes any questions regarding the amount of the overpayments received. As the Court stated in *Ulman v. United States*, 558 F.2d 1, 7–8 (Ct.Cl.1977):

> Where an administrative appeal is compulsory prior to invoking the aid of a court, it does not matter that the party who failed to pursue said appeal is petitioning the Court for relief or defending an action brought against him. In either situation the failure to pursue the prescribed administrative course effectively prohibits his claim or defense which could have been entertained administratively in the first instance.

This Court finds, therefore, that Defendant's failure to exhaust his administrative remedies bars judicial review of the determination of the amount of overpayments

due. *Id.; United States v. Pepper*, No. 79–5743–CIV–SMA (S.D.Fla.1981).

Defendant has cited a number of cases in support of their contention that an estoppel will lie against the United States Government. Defendant has not, however, demonstrated to this Court that estoppel is appropriate in the case *sub judice*.

"A Court will estop—in other words prevent—a party from raising a valid legal argument if (1) his actions or words are inconsistent with the legal right he later asserts; (2) he intends or could expect that the party asserting estoppel would act upon his words or conduct; (3) he knows the real facts; (4) the party asserting the estoppel does not know the true facts; (5) the party asserting estoppel relies upon the conduct or statements of the party to be estopped; and (6) the party asserting estoppel is harmed or prejudiced by his reliance." *Mitchell v. Aetna Casualty and Surety Co.*, 579 F.2d 342, 348 (5th Cir. 1978) (citations omitted).

■ Unfortunately for the Defendant, these factors simply do not exist in the case at bar. The Government's position has been consistent from the start; return the money you owe or challenge the fact that you owe it. There is no inconsistency in pursuing an out of court settlement prior to instituting litigation. Moreover, there has been no showing that Defendant relied on the Government's actions to her detriment.

The only claim of prejudice the Defendant has advanced is that the Government's delay in instituting litigation has deprived her of the means to challenge the overpayment determination. This claim has no merit because, as this Court has already ruled, Defendant is precluded from making such a challenge by virtue of Dr. Savarese's failure to exhaust his administrative remedies. Therefore, the Government's delay has in no way harmed the Defendant.[4]

---

3. Based on the Court's finding that Defendant's failure to exhaust his administrative remedies bars judicial review, it is unnecessary for the Court to rule of Plaintiff's contention that judicial review is precluded by the Social Security Act.

4. Because the Court has found that estoppel is inappropriate in the case at bar, it is unnecessary to rule on whether estoppel can be applied against the United States Government.

■ Finally, the fact that the claim was not made against the Decedent's estate within the period required by Florida Law does not bar this action. The law is well settled that the United States is not bound by state statutes of limitation for filing claims against an estate. *United States v. Summerlin*, 310 U.S. 414, 60 S.Ct. 1019, 84 L.Ed. 1283 (1940).

For the foregoing reasons, Plaintiff's motion for summary judgment is GRANTED and Defendant's motion for summary judgment is DENIED. Plaintiff shall, within ten (10) days from the date of this Order, file a proposed final judgment with the Court.