**UNITED STATES of America**

v.

**HOME HEALTH AGENCY, INC., Bernard E. Godley, Donald J. McDermett, and Carolyn McDermett.**

No. 4:91–CV–664–E.

United States District Court,
N.D. Texas,
Fort Worth Division.

Jan. 3, 1994.

Thelma Quince–Colbert, U.S. Atty's Office, Fort Worth, TX, for plaintiff.

Hal R. Ray, Jr., Thompson & Knight, Fort Worth, TX, for defendants.

## MEMORANDUM OPINION AND ORDER

MAHON, Senior District Judge.

Now before the Court are cross-motions for summary judgment filed by the parties in the above-styled and numbered case.[1] After considering the motions and briefs, the record in this case, and the applicable law, the Court makes the following determination.

## I. BACKGROUND

### A. Background of the Medicare System

This is a Medicare overpayment case. Medicare is the popular title of the health insurance program set forth in Title XVIII of the Social Security Act (the "Act"), 42 U.S.C. § 1395 *et seq.* entitled "Health Insurance for Aged and Disabled." The federally funded program pays for covered health care services to eligible Medicare beneficiaries, namely, the elderly and disabled.

Medicare is divided into two main parts. Part A ("Hospital Insurance Benefits") authorizes payments for primary institutional care, including hospital, skilled nursing facility, and home health care. *See,* 42 U.S.C. §§ 1395c–1395i–4. Part B ("Supplementary Medical Insurance Benefits") authorizes payments for physician and other non-hospital services. *See,* 42 U.S.C. §§ 1395j–1395w.

According to the Act, the Secretary is responsible for the administration of the Medicare program. 42 U.S.C. § 1395kk. Under § 1395cc, the Secretary is authorized to enter into contractual agreements with qualified "providers of services." These providers deliver health care services to Medicare beneficiaries and are compensated through the program.

Pursuant to §§ 1395f(b), 1395*l* (a), and 1395x(v), the amount payable to a participating Medicare provider should be the lesser of the "reasonable cost" or the "customary charge" of furnishing the covered services to eligible beneficiaries. However, Congress recognized the need to reimburse providers on a timely basis. Thus, a reimbursement scheme was included in the Act.

The Act requires that providers be paid "at such time or times as the Secretary believes appropriate (but not less often than monthly) and prior to audit or settlement...." 42 U.S.C. § 1395g(a). These interim payments are subject to adjustment for any resulting overpayments or underpayments. *Id.* The adjustments are to be made by the Secretary's fiscal intermediary following the provider's filing of its annual cost report. According to 42 C.F.R. § 413.64(f), the process works like this:

> (f) *Retroactive adjustment.* (1) Medicare provides that providers of services will be paid amounts determined to be due, but not less often than monthly, with necessary adjustments due to previously made overpayments or underpayments. Interim payments are made on the basis of estimated costs. Actual costs reimbursable to a provider cannot be determined until the cost reports are filed and costs are verified. Therefore, a retroactive adjustment will be made at the end of the reporting period to bring the interim payments made to the provider during the period into agreement with the reimbursable amount payable to the provider for the services furnished to program beneficiaries during that period.
>
> (2) In order to reimburse the provider as quickly as possible, an initial retroactive adjustment will be made as soon as the cost report is received. For this purpose,

---

1. The parties are: Plaintiff United States of America; Corporate Defendant Home Health Agency of Texas, Inc.; Individual Defendants Bernard E. Godley, Donald J. McDermett, and Carolyn McDermett. Motions for summary judg-
ment have been filed by plaintiff, Defendant Home Health, and by the Individual Defendants. However, the Individual Defendant's motion will be addressed in a separate Order.

the costs will be accepted as reported, unless there are obvious errors or inconsistencies, subject to later audit. When an audit is made and the final liability of the program is determined, a final adjustment will be made.

The final adjustment is the result of a comprehensive audit which is followed by the Intermediary sending a Notice of Program Reimbursement ("NPR") to the provider. The NPR constitutes the Intermediary's final determination of the total amount of reimbursement due under the program.

If the provider is not satisfied with the intermediary's final determination of program reimbursement, the provider may, within 180 days of its receipt of the final NPR and provided that the amount in controversy and all other jurisdictional prerequisites are met, request a hearing before the Provider Reimbursement Review Board ("PRRB"). 42 U.S.C. §§ 1395oo (a), (b). *See also*, 42 C.F.R. §§ 405.1835, 405.1837. The Act also provides for expedited Board proceedings. These expedited proceedings make available immediate judicial review (in lieu of an administrative hearing) for "a question of law or regulations … [which] the Board determines … it is without authority to decide…." 42 U.S.C. § 1395oo (f)(1). Finally, provider's may obtain judicial review of the Board's decision. 42 U.S.C. § 1395oo (f)(1).

### B. *Factual Background in the Present Case*

Defendant, Home Health Agency of Texas, Inc. ("Home Health" or "corporate defendant") entered into an agreement with the Secretary of the Department of Health and Human Services (the "Secretary") to serve as a Medicare provider of services. Home Health was assigned Provider Number 45–7147 beginning November 1, 1982.

Blue Cross and Blue Shield of Texas, Inc. ("Intermediary") was subsequently selected to serve as the fiscal intermediary between the Secretary and Home Health.[2] Home Health selected a cost-reporting period ending annually on October 31. In accordance with Medicare rules and regulations, Intermediary made interim monthly payments to Home Health for the period of November 1, 1982 through October 31, 1983. Following the end of its October 31, 1983 cost-reporting year, Home Health filed a cost report with Intermediary. Upon completion of an audit, Intermediary determined that Home Health had been overpaid in the amount of $135,-528.00 and made a retroactive adjustment.[3] Intermediary notified Home Health of the claimed overpayment by letter dated July 25, 1984.

Intermediary then conducted another audit and determined that the overpayments totalled $271,245.00. Intermediary notified Home Health of the results of its audit and the revised overpayment determination via letter entitled "Notice of Program Reimbursement" (the "NPR") dated September 30, 1985. In this letter, Intermediary demanded repayment of the $271,245.00 and also advised Home Health of its right to administrative appeal.

Subsequently, Intermediary decreased the amount of the audited overpayment from $271,245.00 to $249,664.00 through administrative recoupment. No portion of the claimed overpayment has been refunded by Home Health, nor did Home Health avail itself of the administrative appellate process. Effective February 15, 1984, Home Health terminated its participation in the Medicare program.

On September 17, 1991, plaintiff, the United States of America (the "government"), filed suit to recover the alleged overpayment made under the Medicare Program, Part A—Hospital Insurance, as set forth in the Social Security Act, 42 U.S.C. § 1395, *et seq.*, and also pursuant to the common law theory of unjust enrichment. Plaintiff sued the corporate defendant, Home Health, as well as its shareholders, officers, and directors Bernard

---

**2.** An intermediary determines the amount of money due Medicare providers for services rendered to Medicare beneficiaries.

**3.** Plaintiff characterizes the audit as "a preliminary desk audit" and the adjustment as an "initial retroactive adjustment." However, while admitting that an audit took place and a retroactive adjustment made in the amount of $135,528.00, Home Health takes issue with plaintiff's characterizations of these events.

Godley, Donald McDermett, and Carolyn McDermett (the "individual defendants"), for the alleged overpayment. All defendants have answered and are before the Court.

On March 18, 1993, the government moved for partial summary judgment against the corporate defendant Home Health. Plaintiff's claim is that Home Health's failure to administratively challenge the Secretary's overpayment determination makes Home Health liable as a matter of law and precludes any challenge to liability proffered by Home Health. Home Health responded to plaintiff's motion and cross-motioned for summary judgment on statute of limitations grounds.

## II. *DISCUSSION*

### A. *Summary Judgment Standards*

■ Summary judgment is proper when the record establishes that no genuine issue as to any material fact exists, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Hill v. London, Stetelman, & Kirkwood, Inc.*, 906 F.2d 204, 207 (5th Cir.1990). The evidence in the record is to be viewed in the light most favorable to the nonmoving party. *Newell v. Oxford Management Inc.*, 912 F.2d 793, 795 (5th Cir.), *reh'g denied*, 918 F.2d 484 (1990); *Medlin v. Palmer*, 874 F.2d 1085, 1089 (5th Cir.1989).

■ In order to prevail on a motion for summary judgment, the moving party has the initial burden of demonstrating that there is no genuine issue as to any material fact and that he is entitled to a judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Williams v. Adams*, 836 F.2d 958, 960 (5th Cir.1988); *Thibodeaux v. Torch, Inc.*, 858 F.2d 1048, 1050 (5th Cir.1988); Fed.R.Civ.P. Rule 56(c). The party moving for summary judgment need not produce evidence showing the absence of a genuine issue of material fact with respect to an issue on which the nonmoving party bears the burden of proof. *Celotex Corp. v. Catrett, supra*, 477 U.S. at 325, 106

S.Ct. at 2554. Rather, the party moving for summary judgment need only show that the party who bears the burden of proof has adduced no evidence to support an element essential to his case. *Celotex v. Catrett, supra; Teply v. Mobil Oil Corp.*, 859 F.2d 375, 379 (5th Cir.1988). If the movant bears the burden of proof on a claim or defense, he must establish all elements of the claim or defense to prevail on summary judgment. *Western Fire Insurance Co. v. Copeland*, 651 F.Supp. 1051, 1053 (S.D.Miss.1987), *aff'd*, 824 F.2d 970 (5th Cir.1987).

■ Once the moving party has made an initial showing, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986); *Anderson*, 477 U.S. at 257, 106 S.Ct. at 2514–15. In order to avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1356. Rule 56(e) requires that the nonmoving party "set forth specific facts showing that there is a genuine issue for trial." *See Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514.

■ In making its determination on the motion, the Court must look at the full record including the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits. *Williams*, 836 F.2d at 961; Fed.R.Civ.P. Rule 56(c). All reasonable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion and any doubt must be resolved in his favor. *Matsushita*, 475 U.S. at 587–90, 106 S.Ct. at 1356–57; *Meyers v. M/V Eugenio*, 842 F.2d 815, 816 (5th Cir.1988). However, the Court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. at 2511 (1986).

B. *Basis for Summary Judgment in this Case*

### 1. *United States of America's Grounds for Partial Summary Judgment* [4]

The government asserts that it is entitled to summary judgment against the corporate defendant, Home Health, because the defendant corporation did not administratively challenge the overpayment determination nor did it pursue an administrative appeal; thus, argues plaintiff, Home Health cannot challenge the Secretary's determination pursuant to 42 C.F.R. § 405.708. Plaintiff asserts that Home Health's failure to challenge the Secretary's determination, coupled with Home Health's admission that it has not refunded any portion of the alleged overpayment, leaves no genuine issue of fact as to the amount and final determination of the Medicare overpayment to Home Health.

The main thrust of the government's argument for summary judgment is that the corporate defendant did not avail itself of its right to administratively challenge the Secretary's overpayment determination, and thus, it is precluded from challenging the Secretary's determination in this Court. The government's position is well-reasoned and supported by statute and case law. *See,* 42 U.S.C. § 1395*oo* (f)(1); 42 C.F.R. § 405.1877 *et seq.; Ulman v. United States,* 558 F.2d 1, 214 Ct.Cl. 308 (1977); *United States v. Thomas,* 515 F.Supp. 1351 (W.D.Tex.1981); *United States v. Graham,* 471 F.Supp. 123 (S.D.Tex.1979); *See also, United States v. Total Patient Care, Inc.,* 780 F.Supp. 1371 (M.D.Fla.1991); *United States v. Savarese,* 515 F.Supp. 533 (S.D.Fla.1981).

Home Health does not contest plaintiff's claim that the corporation failed to exhaust its right of administrative appeal with regard to the Secretary's overpayment determination. In fact, in its Answer to plaintiff's complaint defendant "admits that they [defendants] have denied liability for any overpayment that may exist and that they did not request administrative appeal." (Defendants' Answer, p. 4, paragraph 18). Again, in its responsive motion to plaintiff's motion for partial summary judgment, Home Health states that:

> for purposes of this Response and Motion, [Home Health] ... agrees that it did not administratively challenge Plaintiff's determination that it had been overpaid for services provided under the Medicare program....

(Defendant Home Health [ ]'s Response to Plaintiff's Motion for Partial Summary Judgment and Motion for Summary, p. 4).

■ As previously mentioned, providers may obtain judicial review of the PRRB determination. 42 U.S.C. § 1395*oo* (f)(1). By definition, judicial review under § 1395*oo* (f)(1) must be preceded by a PRRB decision. This judicial review provision is the exclusive relief available to Medicare providers in federal court. *See* 42 U.S.C. 405(h), *as incorporated by* 42 U.S.C. § 1395ii. Thus, providers must exhaust these administrative appeal rights before judicial review is available.

■ In *Ulman v. United States,* a case factually similar to the present case, the United States Court of Claims held that:

> [w]here an administrative appeal is compulsory prior to invoking the aid of the court, it does not matter that the party who failed to pursue such appeal is petitioning the court for relief *or defending an action brought against him.* In either situation, the failure to pursue the prescribed administrative course effectively prohibits him from raising in court the merits of his claim or defense which could have been entertained administratively in the first instance.

558 F.2d 1, 7–8, 214 Ct.Cl. 308 (1977) (emphasis added). Thus in this case, Home Health's failure to exhaust the administrative appellate procedure precludes it from challenging the overpayment determination which the government seeks to recover.

Home Health has not attempted to assert that it did exhaust the administrative process, relying instead upon its summary judgment argument based upon statute of limita-

---

4. The government's summary judgment motion does not seek summary judgment as to the individual defendants but as to the corporate defendant only.

tions.[5] Thus, absent the Court granting Home Health's motion for summary judgment on limitations grounds, plaintiff's motion for summary judgment is well-taken.

### 2. *Home Health's Grounds for Summary Judgment*

In its Response to Plaintiff's Motion for Summary Judgment and Defendant Home Health's Motion for Summary Judgment, Home Health asserts that plaintiff's claim to recover the overpayment is barred by the applicable statute of limitations of 6 years pursuant to 28 U.S.C. § 2415.[6] Section 2415 states in pertinent part:

> (a) Subject to the provisions of section 2416 . . . every action for money damages brought by the United States or an officer or agency thereof which if founded upon any contract express or implied in law or in fact, shall be barred unless the complaint is filed within six years after the right of action accrues. . . .

28 U.S.C. § 2415(a). Further, both parties agree that the controversy in this case revolves around the phrase "within six years after the right of action accrues."

Home Health argues that plaintiff's cause of action accrued sometime before the Intermediary demanded payment from Home Health by letter dated July 25, 1984. Thus, since the government filed this suit on September 17, 1991, Home Health argues that plaintiff's suit is barred by § 2415.

Plaintiff, on the other hand, claims that the six year time clock does not begin to run in Medicare overpayment cases until the final audit determination is made by the fiscal intermediary. This final determination, argues the government, gives the government a cause of action and, in any event, the July 25, 1984 letter from the Intermediary was not the final audit determination. According to the government, the final audit determination which began the statute of limitations clock occurred with the Intermediary's final audit and issuance of the Notice of Program Reimbursement on September 30, 1985, making plaintiff's September 17, 1991 complaint timely.

 After considering the arguments by the parties on the subject, the Court is convinced that the government's contention is correct and the statute of limitations began to run on September 30, 1985, the date of the Intermediary's final determination and issuance of the NPR to Home Health. This view is also the prevailing view of other circuit courts and district courts who have addressed the issue. *See, United States v. Hughes House Nursing Home, Inc.,* 710 F.2d 891 (1st Cir.1983) (collecting cases); *United States v. Gravette Manor Inc.,* 642 F.2d 231 (8th Cir.1981); *United States v. Withrow,* 593 F.2d 802 (7th Cir.1979); *United States v. Graham,* 471 F.Supp. 123 (W.D.Tex.1979); and *United States v. Gottlieb,* 424 F.Supp. 417 (S.D.Fla.1976).

Most recently, in *Phillips Petroleum Corp. v. Kelly,* Judge Barefoot Sanders, Chief Judge of the Northern District of Texas, stated, albeit in dicta, that:

> when payments to an insurance provider are made under the Medicare Part A scheme, they are only estimates of amounts due, and, by definition, no cause of action could accrue based upon payments that are mere estimates.

1992 WL 387236, at 6 (N.D.Tex. Sept. 18, 1992). Judge Sanders further recognized that "the [Medicare] scheme's lock-step progression must be completed before a plaintiff 'has a right to enforce his (or her) cause' of action" *Id.* (quoting *United States v. One 1961 Red Chevrolet Impala Sedan,* 457 F.2d 1353, 1358 (5th Cir.1972)). Finally, the Court cited *United States v. Gottlieb,* 424 F.Supp. 417, 420–421 (S.D.Fla.1976), for the proposition that:

> no 'final adjustment' is contemplated until 'an audit is made and the final liability of the program is determined.' . . . (n)o suit

---

5. As Home Health states in its motion, "[t]he Court should deny Plaintiff's Motion for Partial Summary Judgment and grant [Home Health's] Motion for Summary Judgment *because* Plaintiff's claims against [Home Health] are barred by limitations."

6. All parties agree that § 2415 is the applicable statute of limitations in this case.

should be maintained until the final adjustment has been attempted as provided in the regulations. Therefore, until an attempted final adjustment, it cannot be said that plaintiff has a right to enforce his claim.

*Id.* Although Judge Sanders' statements in *Phillips Petroleum* are dicta, this Court finds that the analysis and reasoning contained therein is sound and consistent with the majority of the courts which have addressed this subject.

█ Defendant relies upon *United States v. Robert's Nursing Home,* 710 F.2d 1275 (7th Cir.1983). Defendant asserts that *Robert's* holds that the government's claim in Medicare overpayment cases accrues when the fiscal intermediary makes its initial demand for payment. The conclusion in *Robert's* is based upon the nature of the demand letter sent in that case. The *Robert's* court distinguished some of the cases cited supra, i.e., *Withrow* and *Gravette Manor Homes,* on the basis that there is nothing in those cases to indicate whether a demand letter had been sent prior to the final audit or whether the intermediary had informed the provider that the initial audited amount was subject to later adjustment.

The Court agrees that *Robert's* holds as Home Health asserts. However, defendant's claim that the demand letter in *Robert's* and in the present case are "identical" is not completely accurate and *Robert's* is distinguishable in one important aspect: the intermediary's failure to inform the provider of the possibility of later adjustment. Notably, the letter sent by the Intermediary in the present case contained the following phrase:

This billing should not be considered as the Notice of Reimbursement of a Final Settlement determination.

*See* Defendant's Ex. 1 attached to its Response. The presence of this language imparted notice to defendant that the amount of overpayment contained in the letter was not the "final" determination, but could be subject to later adjustment. Further, a letter dated March 1, 1985 also notified Home Health that the final audit had not been completed.

Moreover, to adopt Home Health's argument in this case, and consequently the *Robert's* holding, that the July 25, 1984 demand letter should be the date at which the statute began to run, would run contrary to logic and reason. The July 25, 1984 letter from the Intermediary to Home Health merely informed defendant that the Intermediary had received the provider's cost report for the fiscal period ending October 31, 1983 (the "cost report"). According to plaintiff, the cost report from Home Health was received on July 18, 1984 and itself indicated an overpayment. To hold that the July 25, 1984 letter, a mere one week later and simply acknowledging the overpayment contained in Home Health's cost report, constituted a final determination of overpayment and gave plaintiff a cause of action would ignore certain realities.

For example, the cost report covered the preceding fiscal year of Home Health. It took approximately 8 months for Home Health to compile and submit the cost report (the fiscal year ended October 31, 1983 and the report was received by the Intermediary on July 18, 1984). The July 25, 1984 letter could be little more than an initial acknowledgment of the $135,528.00 overpayment reflected in Home Health's cost report. In fact, as the facts in this case show, a final audit, culminating in the sending of the NPR on September 30, 1985, revealed a final adjusted overpayment amount nearly twice the figure initially determined, resulting in an overpayment determination in the amount of $271,245.00. There cannot be any realistic expectation that the government could review Home Health's cost report thoroughly in one week.[7] In this way, defendant's argument simply fails.

█ Finally, defendant points to an internal document of plaintiff's entitled "Analysis

---

7. The importance of this fact can be illustrated as follows: For example, if the government's alleged overpayment cause of action had accrued with the July 25, 1984 letter, but subsequent audit revealed that actually no overpayment had been made, and, in fact, an *underpayment* had occurred, Home Health would have no cause of action until that final determination of underpayment.

of Overpayment Balances" which defendant asserts lists a statute of limitations date of July 25, 1990 for the $135,528.00 overpayment specifically mentioned in the Intermediary letter of July 24, 1984. Defendant argues that this results in an admission by plaintiff that it considered July 25, 1990, six years after the Intermediary's July 24, 1984 letter, "to be the dispositive date for accrual of it claim" against Home Health.

Plaintiff concedes that the internal document reflects such a date under the column heading "SOL." However, plaintiff argues that the second date listed in the document, September 30, 1991, is the correct date as it is based upon the date of which the NPR letter was sent, September 30, 1985. Moreover, argues plaintiff, the overpayments in this case arise out of the same fiscal year and the September 30, 1991 "SOL" constitutes "the correct date for determining the statute of limitations for the entire claim."

The Court is not convinced that plaintiff's listing of an incorrect limitations date on an internal document constitutes an admission that the date listed is the correct date. Additionally, the plaintiff's recordation of a limitations date, for its own use internally, does not alter the legally applicable limitations period. The Court finds that the correct limitations date was September 30, 1991, making plaintiff's filing of this suit on September 18, 1991, timely.

### III. *CONCLUSION*

In summation, the Court finds that the summary judgment evidence before the Court reveals that no genuine issues of fact remain as to defendant Home Health's liability for Medicare overpayments made during the fiscal year ending October 31, 1983. Accordingly, the Court holds that plaintiff's motion for partial summary judgment is meritorious and well-taken.

Further, the Court finds that plaintiff timely filed suit in this case within the applicable statute of limitations and, therefore, Defendant Home Health's motion for summary judgment is denied.

It is hereby ORDERED that Plaintiff's Motion for Partial Summary Judgment is GRANTED.

It is further ORDERED that Defendant Home Health's Motion for Summary Judgment is DENIED.